### E. P. LUCAS ET AL. *v.* AMERICAN FREEHOLD LAND MORTGAGE COMPANY.

1. VOID FORECLOSURE. *Mortgagee in possession. Estoppel. Limitations.*

    Although a mortgage sale is voidable for irregularities, if the mortgagee who bought enters, and, with the acquiescence of the mortgagor, continues in possession, paying taxes and exercising ownership for nearly ten years, the mortgagor is estopped to plead the statute of limitations against the debt or assert the legal title, until the *status quo* is restored.

2. SAME. *Mortgagee in possession. Accounting.*

    In such case, the legal title of the mortgagor will not be divested by estoppel, but the purchaser will be treated as mortgagee in possession, entitled to satisfaction of his debt, but liable to an accounting as to rents.

FROM the chancery court of Noxubee county.

HON. T. B. GRAHAM, Chancellor.

This is a bill by appellee against appellants to remove clouds from title. The facts alleged in the bill, so far as it is necessary to state them, are as follows: In 1883 W. B. Lucas, Sr., E. P. Lucas, his wife, and W. B. Lucas, Jr., his son, borrowed from appellee, the American Freehold Land Mortgage Company, of London, $1,250, securing the same by a trust-

deed on the lands in controversy, which were owned by W. B. Lucas, Sr. The debt secured was not payable until 1887, but the deed of trust provided that if the grantors failed to pay the interest as it fell due annually, or to pay the taxes, the entire indebtedness, at the option of the mortgage company, should be declared due, and the trust-deed foreclosed. One Sherwood was named as trustee, with power of sale. The grantors failed to pay the taxes and interest due in 1884; and thereupon the mortgage company declared the whole debt due, and, Sherwood having refused to act as trustee, appointed Dinsmore trustee in his stead, who advertised and sold the lands in May, 1885, to F. W. Dunton, agent of appellee, he bidding the amount of the debt, and taking the deed directly to himself, but for the mortgage company. Dunton entered and continued in possession until 1889, when, W. B. Lucas, Sr., having in the meantime died, by an arrangement with the heirs, Dunton sold to P. G. Lucas, who, as part of the trade, executed a trust-deed to G. W. Wheeler, trustee, to secure the purchase price, which was all on credit. After this sale to P. G. Lucas, the mortgage company was advised that there was some doubt as to Dinsmore's authority, as substituted trustee, to make the sale, inasmuch as the trust-deed provided that the new trustee might be appointed by the mortgage company by writing duly acknowledged and recorded, whereas Dinsmore was appointed by Austin Corbin, attorney in fact of the mortgage company, and the instrument of writing was acknowledged in London, England, not before a proper officer, but before a notary public. In view of this doubt, the mortgage company, in September, 1889, appointed one Kirksey trustee in the original trust-deed, and he advertised and sold the land, which was bought in by G. W. Wheeler for the benefit of the company. P. G. Lucas made default in the payment of the first note of the purchase money, and Wheeler advertised and sold the land, in 1892, to one Edgel, who also purchased for the benefit of the company. In the meantime,

P. G. Lucas had procured quitclaim deeds from all the other adult heirs of W. B. Lucas, Sr., without the knowledge of the mortgage company, and, at the sale by Kirksey, attorneys for P. G. Lucas and the minor heirs of W. B. Lucas, Sr., gave notice that they would claim the land. Edgel, after his purchase, was denied possession of the land, and P. G. Lucas, whose tenants were on the land, took rent notes from them, payable to Brame & Dent, attorneys for the heirs of W. B. Lucas, Sr. Edgel thereupon brought unlawful detainer, and secured possession. In February, 1894, the heirs of W. B. Lucas, Sr., brought ejectment against the tenants of the mortgage company, without giving any notice, by publication or otherwise, to the nonresident mortgage company. The tenants suffered judgment by default, and the appellants, the heirs of W. B. Lucas, Sr., obtained possession by means of a writ of possession.

After setting out all the foregoing facts, the bill alleged that the claim of appellants is a cloud on complainant's title, and the prayer is for cancellation of the claim as a cloud. To this bill defendants demurred, on the grounds, among others, that the sale by Dinsmore, as substituted trustee, was void because his appointment was not made by the beneficiary in accordance with the terms of the trust-deed, and because the subsequent sale by Kirksey, as substituted trustee, was void, the debt secured by the trust-deed being then barred by the statute of limitations of six years, and because the sale was not made in conformity to law. The demurrer was overruled, and defendants appeal.

*T. W. Brame,* for appellants.

The appointment of Corbin, attorney in fact, and his appointment of Dinsmore as substituted trustee, was in violation of the deed of trust, and void. *Hartley      O'Brien,* 70 Miss., 825; 1 Perry on Trusts, § 294.

Dunton acquired no title by his pur      e, and his quitclaim

to P. G. Lucas was worthless, and the trust-deed by Lucas to him conveyed only his interest as heir. For the same reason, Edgel got no title from Wheeler's trust-deed. To cure the defect in the sale, the company attempted to appoint Kirksey trustee. The appointment of Kirksey was void, because it was acknowledged before a notary public in London, England, whereas, the code of 1880, § 1220, does not authorize a notary of a foreign country to take acknowledgments of instruments for record in this state. The acknowledgment before the proper officer, after the sale was made, and its record at that time, could not cure the defect. The debt was declared to be due December 1, 1884. The statute of limitation began to run at that time, and the entire debt was barred when this suit was begun. The demurrer ought to have been sustained.

*J. A. Orr*, on the same side.

Complainants, upon the face of their bill and exhibits, show that they are without legal title. Defendants are in possession, and cannot be evicted in this suit.

*E. B. Kirksey*, for appellee.

If the substitution of the trust-deed was a nullity, it is still true that the sale by Dinsmore, as trustee, extinguished the indebtedness of the original mortgagors. It would be in the highest degree inequitable to allow the heirs of W. B. Lucas, Sr., to recover the land and at the same time hold it clear of the charge which the company's purchase, through Dinsmore, extinguished. They must either return the money or cease to claim the land. *McGee* v. *Wallis*, 57 Miss., 638; *Bonner* v. *Leslie*, 61 *Ib.*, 397.

The purchase by P. G. Lucas of the outstanding title of the adult heirs of his father inured to the benefit of Dunton, to whom he had given his warranty. *Aston* v. *Robinson*, 49 Miss., 348.

If Austin Corbin's act in signing the name of the company

to Dinsmore's substitution was void, his declaration that the whole of the indebtedness was due was equally void, and the statute could not begin to run.

*T. J. O'Neill,* on the same side.

The foreclosure sales will not be declared void, at the instance of the heirs, unless they offer to do equity and pay the debts which the sale extinguished. *Clark* v. *Wilson,* 56 Miss., 753; *McGee* v. *Wallis,* 57 Miss., 638; *Bonner* v. *Leslie,* 61 *Ib.,* 397. Where a vendee pays off incumbrances, or buys an outstanding title, he will be considered doing so for protection of the vendor's title. *Aston* v. *Robinson,* 49 Miss., 348. But a vendor cannot purchase or set up such outstanding title to defeat that which he has conveyed to the vendee. *Kirkpatrick* v. *Miller,* 50 Miss., 521; Bigelow on Estoppel, 382.

WOODS, J., delivered the opinion of the court.

For nearly ten years the appellee has been in possession of the lands in controversy, paying taxes thereon year after year, and exercising all acts of ownership over them. True it is, that the proceedings which culminated in the sales of the lands, under which appellee claims, were irregular, and the sales themselves voidable; but equally true it is that the appellants, during that long period, expressed no dissatisfaction with what had been done, nor took any steps to call in question the rights which appellee was supposed to have acquired under such sales. Now, at length, when the note evidencing the original indebtedness is barred, the appellants for the first time change their attitude and take the position that the legal title to the lands did not pass because of the irregular execution of the trust-deed given to secure that note, and that, the bar of the statute of limitations having accrued, the appellee must surrender, and bear the loss of the lands and the indebtedness as well. But this position of appellants cannot be maintained so long as the beneficent doctrine of equitable estoppel survives in all its vigor. The

long acquiescence of appellants in the possession and avowed ownership of the lands by appellee, and until after the debt was barred, cannot operate to transfer their legal title, perhaps, but it both can and must operate to prevent their unconscientious assertion of it until they restore appellee to its original position. Until the *status quo* is restored, they will be estopped to plead the statute of limitations. . Their legal title will not be divested out of them and vested in appellee by estoppel, but the debt of appellee and the security originally given to secure its payment are to be regarded as unaffected by the lapse of time, because of the conduct of appellants, whereby appellee was led to believe, and to act on that belief, that its debt had been paid off by the sales of the lands under the irregular execution of the trust-deed. *Staton* v. *Bryant*, 55 Miss., 261; *Barnett* v. *Nicholls*, 56 *Ib.*, 622; *Kelly* v. *Wagner*, 61 *Ib.*, 299.

If appellee can make good the averments and charges of its bill, it should be treated as a mortgagee in possession entitled to satisfaction of its debt, or any balance that may appear to be due upon a proper accounting, out of the rents.

*Affirmed.*