PENNINGTON *v.* PURCELL.

(Division A.   Dec. 2, 1929.)

[125 So. 79 No. 28039.]

Forrest G. Cooper, of Indianola, and **J. J. Breland**, of Sumner, for appellant.

**Chapman, Moody & Johnson**, of Indianola, for appellee.

Argued orally by **Forrest G. Cooper**, for appellant, and by **Elmer Johnson**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

The appellant, Ben T. Pennington, filed his bill against the appellee, Mrs. E. M. Purcell, alleging that by virtue of a certain deed of trust executed January 12, 1920, by Joe B. Evans in his favor, he was invested with a superior, paramount, and first lien on a certain twenty-nine-acre tract of land in Sunflower county, Mississippi, and prayed that any and all claims asserted by Mrs. Purcell be decreed to be subordinate and inferior to the lien of his deed of trust, and that same be foreclosed by decree of the chancery court.

Hitherto the appellee filed a demurrer to the original bill, which being sustained by decree of the lower court, appellant appealed to this court therefrom, to settle the principles of the case, and the report of that appeal, styled the same as this is found in 145 Miss. 543, 111 So. 577, wherein the decree of the court below sustaining the demurrer was reversed, and remanded for trial in that court.

When the case reached that court, appellee filed her answer, and the issue being joined and the evidence heard, the court entered a decree dismissing appellant's bill, and denying him any relief; from which decree an appeal was prosecuted here.

We deem it unnecessary to set forth at length the pleadings, believing that a statement of the facts will render this opinion readily and easily understood.

On December 2, 1918, Mrs. Purcell filed a petition for partition of this and other land against J. B. Evans, her cotenant, and further asserted that Evans should be required to account to her for rent due on the land for prior years, alleging that he had exclusive use of the lands and of the rents thereof.

On May 20, 1920, the chancery court entered its decree, directing that the land be partited in kind; and appointed a commissioner for that purpose, and also a master to make and state an account of the rents and profit between Mrs. Purcell and Evans.

On December 20, 1920, a decree was entered allotting to the several owners their respective shares; Joe Evans being allotted the twenty-nine-acre tract here in controversy.

This decree further adjudged Evans to be indebted to Mrs. Purcell in the sum of two thousand three hundred sixty dollars, and directed Evans to pay said sum within twenty days; in case of default, a commissioner was appointed to sell said lands, a lien thereon in favor of Mrs. Purcell being declared. Evans did not pay the judgment, and on May 4, 1921, the commissioner sold said land, and Mrs. Purcell purchased same for two hunderd fifty dollars, and credited the amount of her bid on the judgment.

Having failed to pay the costs adjudged against him in the partition decree, execution issued against Evans, and the sheriff levied execution on the land and sold same, which Mrs. Purcell purchased for the sum of one

hundred seventy dollars and ninety-two cents. This sale was on the 25th of May, 1922.

Mrs. Purcell went into possession of the land on the date of the sale, and remained continuously in possession for more than two years before the bill was filed in the case here under review, which bill was filed by Pennington on June 1, 1925, and sought the cancellation of both the sheriff's deed and the commissioner's deed to Mrs. Purcell.

In the bill filed by Mrs. Purcell for partition, there was no specific allegation that she claimed an equitable lien on Evans' land, neither was there filed lis pendens notice. Pennington was not a party to the partition suit.

In this state of the record on January 12, 1920, Evans executed a note for nine thousand dollars, and a deed of trust on his undivided interest in all of the lands, to secure said note; the description of said land in the deed of trust being here set out verbatim: "My entire undivided interest in and to the northeast quarter (NE¼) of section twenty-four (24), township twenty-four (24), range three (3) west in Sunflower county, Mississippi, which said interest hereby conveyed consists of twenty-nine-one hundred twelfths (29/112) interest which is free from any litigation and to which I have a clear undisputed title; also three-eighths (⅜) interest in same which is involved in litigation with Mrs. E. M. Purcell in the chancery court of Sunflower county, Mississippi."

We have here set out a general outline of the facts of this case, and will state such additional facts as may be necessary to a proper understanding of this opinion in connection with the several assignments of error.

Appellant, Pennington, here contends that on the pleadings and proof in this case he was entitled to a decree, and the court erred in dismissing his bill. In order to apprehend the questions presented for decision, we shall consider the three propositions submitted to this

court by appellee, Mrs. Purcell, in her effort to uphold the decree of the court below.

First, Mrs. Purcell contends that when Pennington took a deed of trust on these lands on January 12, 1920, he had both actual and constructive notice of appellee's claim of lien at the time the deed of trust was executed; that is, by the recital (quoted supra) in the deed of trust taken by Pennington, he was notified that there was a partition suit pending in the chancery court of Sunflower county, Mississippi, the bill having been on file since 1918, and being then and there a pending case. Counsel for appellant, in answer to this proposition, says that the case of Pennington v. Purcell, 145 Miss. 543, 111 So. 577, thoroughly disposes of this question of notice, calling our attention to the fact that this case on former appeal was fully considered by the court in an original opinion, and upon suggestion of error, and contends that the question of Mrs. Purcell's lien and the allegations of her bill did not constitute constructive notice. This court said that she had an inchoate right to an equitable lien, calling attention to the fact that the bill did not assert, in its statement of facts, that she was seeking to obtain such an equitable lien, and this was decided originally on the theory that there was at the time a lis pendens notice of the claim of the right to an accounting between Pennington and herself as cotenants. Afterwards the court corrected this statement as to the lis pendens notice, by saying that there was no such notice filed.

Let it be remembered that this case was here before on demurrer, and at that time the court undertook to settle the principles of the case for the guidance of the court below in the future consideration of the case. We are not disposed again to take up and consider the question which was maturely considered by this court, but we content ourselves by saying, there being no fact in the evidence tending to show any other knowledge than was

conveyed by the recital in the trust deed, that the former opinion upon this question is the law of this case, on which the parties and the court below had a right to rely and which we are not disposed to modify or change at this time.

This court held, in its former opinion, that no lien in fact existed until the decree of the court was entered adjudging an equitable lien for the rents and profits due to one cotenant as against another, and that the lien adjudicated to Mrs. Purcell was subordinate to the mortgage loan of Pennington.

Counsel for appellee cites us to the case of Brewer v. Browning, 115 Miss. 358, 76 So. 267, 519, L. R. A. 1918F, 1185, Ann. Cas. 1918B, 1013, wherein, on the second appeal, this court reversed its holding as announced on the first appeal. Without reviewing that case, we will simply say that the court there recognized the general rule that ordinarily a question considered and determined in a former appeal is deemed to be settled, and is not open for re-examination or reconsideration on a second appeal.

The necessity for this rule is obvious—there must be an end to litigation. When a case is brought here for the express purpose of having the court announce the principles upon which it is to be tried, and these principles have been announced and the case remanded to the lower court, then this court should enforce the general rule, unless the mistake of the court in its former opinion is so palpable as to amount to a miscarriage of justice.

Second, the appellee, by her answer, set up that the debt upon which the trust deed was founded and sought to be enforced by the appellant, Pennington, was a fictitious or simulated debt, and that this case cannot be reversed by this court because the chancellor found this fact in appellee's favor. In the first place, there is no finding of facts in the decree of the chancellor, nor is

there any written opinion; but we would be bound to presume, if there had been an issue of fact presented by the evidence adduced in the lower court, that the court correctly found the facts, unless we were of opinion that his finding was manifestly wrong. Appellee sought to establish that the debt was fictitious by the cross-examination of Evans and Pennington, who testified positively and unequivocally that the debt was bona fide and not simulated, and that nine thousand dollars as consideration moved from Pennington to Evans for the note and the deed of trust securing it. Pennington produced a check payable to Evans for more than four thousand dollars, indorsed to the People's Bank of Sumner, which he said was given in payment of a note which he thought had been executed by Evans to that bank in 1919; that he gave other checks which he could not now produce because of the length of time which had elapsed; and that he furnished certain other articles, all of which went to make up the nine-thousand dollars. As against this positive testimony, the clerk of the chancery court was introduced, and it was shown by him that only a trust deed which was executed in 1917 was of record. This deed of trust was executed by Evans to the People's Bank, and it was for a small sum, while these witnesses were of the opinion that the trust deed which Pennington was furnishing the money to pay off was executed in 1919. However, the trust deed offered in evidence showed that while executed in 1917 for a small amount, it secured any further advances which the bank might make to Evans, and was security for any obligation that he might owe the bank. We think this was an immaterial contradiction, if it at all contradicted Pennington and Evans, and is entirely insufficient to raise even a suspicion that the debt herein involved was simulated and fictitious.

Third, the appellee, in her answer to the bill in this cause in the court below, set up the two-year statute of

limitations, Hemingway's Code 1927, section 2660, section 3122, Code of 1906. Presumably the court below held that this suit instituted by Pennington was barred by this statute, and it is apparent that it is upon this ground that the court below based its decree dismissing the plaintiff's bill. This section is as follows: "An action shall not be brought to recover any property hereafter sold by order of a chancery court, where the sale is in good faith and the purchase-money paid, unless brought within two years after possession taken by the purchaser under such sale of the property."

The appellant makes no attack upon the good faith of the sale, but insists in his argument and brief here that the purchase money was not paid because Mrs. Purcell credited her bid of two hundred fifty dollars on the decree for more than two thousand three hundred dollars which she had, and cites us to the case of Shannon v. Summers, 86 Miss. 619, 38 So. 345. That case was directed to the good faith of the purchaser who acted as administrator conducting the sale, and the administrator credited the amount of the bid to his (the administrator's) debt. In other words, there is no similarity between the two cases. We think the rule is properly stated as follows: "At a judicial sale where the sale is to be for cash, if a creditor purchases he may make payment by applying the debt due himself in payment of his bid so far as the purchase money would inure to him." 35 C. J. 53. Also see 41 C. J., p. 977, section 1427.

We are of opinion that there is no merit in this contention; so far as we are able to glean from this record, there seems to be nothing irregular in the decree ordering the sale, or in the sale and the confirmation thereof, or in the deed in pursuance of the decree of confirmation; in fact, the whole proceeding appears to be valid and regular. At any rate, our attention is not called to any invalidity or irregularity in the proceedings by which

Mrs. Purcell acquired the title to this land. We will further say that the sale was made in good faith; that the purchase money was paid by Mrs. Purcell, the purchaser; and that from the date of the sale she went into possession of the land so sold, and was in possession for about ·four years—more than two years next after the date of the sale.

In the former opinion in this case, cited supra, this court held that the lien acquired by decree by Mrs. Purcell for rents and profits was subordinate to the lien of the trust deed executed by Evans in favor of Pennington in January, 1920, during the pendency of the suit. In other words, unless this statute of limitations has destroyed Pennington's lien acquired by contract with Evans, in the form of a mortgage, the mortgage lien is paramount, and superior to the lien acquired by Mrs. Purcell, and her title is subordinate to the mortgagor. Within the range of our knowledge this is the first time this statute has ever been invoked and applied in this state as being a general Statute of Limitations, imbued with the virtue of destroying a previous, paramount, live lien by statutory declaration. This statute has been reviewed by this court in a number of decisions. It has never been applied to a stranger to the record, but has always been applied to parties and privies whose title was sought to be affected by the decree and sale. To put it in another way, the adjudicated cases in this jurisdiction have been cases which arose because the attacking party's title rested upon irregularities, or invalidity of the proceedings and decrees leading to, and culminating in, the deed executed in pursuance of the decree ordering the sale. With additional features, but with all of this statute embraced therein, this section first appeared as section 2173 of the Revised Code of 1871. The first part of the statute refers to past sales, and the latter part of the statute is in substantially the same language as our

present statute. It appeared in the Revised Code of 1880 as section 2693, and in the Revised Code of 1892 as section 2760. Counsel for appellee cites us to no adjudicated case holding that the effect of this statute is so far-reaching as to destroy a valid subsisting lien, or outstanding title not involved in the proceedings leading to the decree and sale thereunder, and title resulting therefrom. We think it has not been construed by the Bench and Bar of this state to be a Statute of Limitations as against the world, but, we think, has been generally recognized as a curative statute, remedial in its nature, in that a good-faith sale, and the payment of the purchase price, coupled with two years' possession of the property, was effective to bar any attack upon the irregularities of the proceedings, or invalidity of the decree.

Section 5, page 830, Hutchinson's Mississippi Code from 1798 to 1848, provided: "That in all cases in which lands, tenements, or other real estate of a deceased person, or of a minor under the age of twenty-one years, has been, or hereafter shall be, sold by any executor, administrator, guardian, or other person, under and by virtue of any order or decree of any court of probate or chancery of this state, which sale has been, or shall be, bona fide and fairly made, and the purchase money paid by the vendee, the person or persons claiming right of entry upon such lands, tenements, or other real estate, by descent or inheritance from such deceased person or persons, or from such minors, shall be barred from all right of entry upon such lands, tenements, or other real estate after the expiration of three years (in the case of persons now of full age of majority), from the passage of this act; and in the case of minors under the age of twenty-one years, femme coverts, persons insane, without the limits of the United States, or personally imprisoned, after the expiration of five years next after the removal of such disability."

In the case of Richardson v. Bettie Brooks, 52 Miss. 116, Judge CHALMERS, as the organ of the court, said, with reference to section 2173 of the Revised Code of 1871, that said section applied by its terms to invalidities which had crept into probate court sales, made in good faith, where the purchase money had been paid.

In the next case considered by the court, Morgan v. Hazlehurst Lodge, 53 Miss. 665, with reference to this statute Judge SIMRALL said:

"The manifest purpose of the statute was remedial. It is framed on the idea of giving repose and confidence to titles derived from probate sales made prior to the 1st of October, 1871, and to the same kind of sales made by executors, administrators and guardians subsequently by the chancery court. The evil was, that, because of the negligence and carelessness which experience had shown marked the history of the probate court, it was almost the exception to conform to the statutory directions, in the exercise of that special and limited jurisdiction for the sale of the real estate of decedents by their personal representatives, and of minors by their guardians; and under the decisions applicable to that sort of jurisdiction the titles of the purchasers were invalid. Persons who had in good faith paid their money, years afterwards lost their lands, and the heirs recovered the property oftentimes disencumbered of debts.

"The statute proposed to cure the evil by applying a short limitation where the sale was free from fraud, and the purchaser in good faith had paid his money; so that if the purchaser lost his land, he might indemnify himself in some mode or other. The heir, or other person claiming derivatively from the decedent, if he relies on the invalidity of the sale as the ground of recovery, must bring his action to recover the property within one year after the statute of 1871 went into effect (1st October, 1871), when the sale had theretofore been made, provided

the sale was fair and bona fide, and the purchase-money has been paid. If the sale be not of that character, or the purchase-money has not been paid, then the action is governed by the general Statute of Limitations. The language of the section is, 'no action shall be brought to recover property heretofore sold.' . . .

"A close analysis of the language will help to disclose the legislative intent. The bar of one year attaches to the action brought to recover the property sold. The action is that judicial proceeding by which the claimant on the ground 'of the invalidity of the sale' seeks to recover it. . . . It is also plain that the parties who bring the action must claim to have the title of the decedent by devolution, as his heir, which title, as is claimed, was not divested by the sale of the administrator. The statute, in effect, says to such claimants, 'You shall not recover the property' on the ground of the invalidity of the sale, if, in fact, it was made in good faith and the purchase-money has been paid, unless you bring suit within one year from the 1st of October, 1871, if the sale has been made before that time. . . . It is said the invalidity meant is some irregularity occurring after decree. If the court had jurisdiction of the subject-matter and parties, the decree of sale is valid, and the sale itself would stand on the same footing as other judicial sales, and could not be impeached collaterally for mere irregularities.

"The statute is remedial and curative, has its origin in that policy, and, if the words will admit of it, should receive that construction which will accomplish the end aimed at."

In Jeffries v. Dowdle, 61 Miss. 504, the heirs of a lunatic brought suit to recover the land sold by order of the probate court on a petition of the guardian, and the court there held that the guardian was such as was embraced within the meaning of the statute, and that the

one-year Statute of Limitations (now two years) applied.

In Summers v. Brady, 56 Miss. 10, heirs whose ancestor's lands had been sold by the administrator under an order of the chancery court, who failed to bring their action for recovery of the land within one year after such sale, were held barred, even though notice was not given to them, and this applied to infants and married women, barring their rights of action, the same as persons sui juris.

In Bradley v. Villere, 66 Miss. 399, 6 So. 208, the court held that the statute applied to sales for partitions, and applied the statute, although it appeared that the constitutional method of sales of land had been destroyed.

In Martin v. Gilleylen, 70 Miss. 324, 12 So. 254, the court held that this section does not debar a minor interested in lands which had been sold in partition proceedings from filing a bill of review at any time within two years after coming of age. Since the statute here under consideration did not apply to such proceedings, Judge Woods seems to have held that this section is a part of the general law of limitation of actions, and is not in force in partition proceedings, and distinguishes partition proceedings from other decrees of the chancery court.

In the case of Foster v. Gulf Coast Canning Co., 71 Miss. 624, 15 So. 931, it was held that this section, together with the section as to final decrees in partition proceedings, do not apply to a bill for cancellation of certain deeds clouding complainant's title to an undivided interest in certain lands, though many years prior thereto there was a decree to which complainant, then a nonresident infant, was not a party, partitioning such lands on the case then made, and held that the suit had been brought within the ten-year statute of limitations.

In Jordan v. Bobbitt, 91 Miss. 1, 45 So. 311, 343, there was a general discussion of this statute by the three

members of the court as then constituted, Judges MAYES, CALHOON, and WHITFIELD, the latter dissenting. In this case Mann was the purchaser at a void administrator's sale of lands to pay the debt of a decedent. Before purchasing at the probate court sale, he had purchased the dower interest of the widow, and a majority of the court held that the two-year Statute of Limitations applied, but did not begin to run until the cause of action accrued, which was on the date of the widow's death, when the life estate fell in. In this case the court reiterated the purposes of the legislature in passing this Statute of Limitations, and the evil that it was intended to cure, which we have heretofore set out. In that opinion it is called a Statute of Limitations, statute of repose, a curative statute, and a remedial statute; and it was said in that case that we should not defeat such statutes by a strict construction thereof, and that the court should seek, in construing the Statute of Limitations, to give it the operation intended. We think Judge CALHOON, in his concurring opinion, struck the keynote of this matter in his opening sentence, in this language: ''If everything had been regular and complete, Mann would have had the title by his purchase under the decree of sale, and so, now appellant, who claims under him, would have it.'' This clearly shows that the purchaser did not get any better title by virtue of this statute than was conferred by a valid decree. While it is true that he speaks of this statute as a Statute of Limitations, the same judge said that this is a beneficent statute of repose, and uses this expression: ''Take the general statute [referring to the general ten year Statute of Limitations] and read 'one year' [now two years] instead of 'ten years,' and we have the case before us.'' Counsel for appellee insist that if the lands were sold by the chancery court with the other conditions established, this statute applies as against the world. The court also said: ''The purchaser

may buy at a probate sale with as much reliance upon the effectiveness of the bar created by this statute, in a proper case, as the heir may look to it as his refuge in case the sale by order of the court was void.''

In the same case it was held that the statute should be applied in all its rigor to reversioners or remaindermen, but that the cause of action did not accrue until the falling in of the life estate.

It will be noted that Pennington's trust deed in this case was upon an undivided interest, and by virtue of section 3539, Code 1906, section 3053, Hemingway's Code of 1927, when the land was partited in kind, the lien which he had upon the undivided interest attached to that portion which was assigned to his mortgagor. It will also be noted that in this state we have a general ten-year Statute of Limitations, found in sections 2628, 2629, and 2632, Hemingway's Code of 1927, which sections are 3090, 3091, and 3095 of the Code of 1906, generally known as the adverse possession statute.

If the construction of the statute contended for by the appellee should be applied, it would then mean that the easiest and best way to obtain a title to land, freed from valid subsisting paramount liens, would be to obtain an irregular and invalid decree of the chancery court ordering the sale; and then the Statute of Limitations would complete and perfect the title in the purchaser, if he paid the purchase money and bought in good faith, upon his possession thereof for two years. In all the cases cited, beginning with Richardson v. Brooks, down to and including Dendy v. Commercial Bank & Trust Co., 143 Miss. 56, 108 So. 274, this statute has never been held to change the rule of caveat emptor in its application to a purchaser at a judicial sale, nor was it the intention of the legislature to do other than bar those who sue to recover the land because of invalidities in the proceedings which brought about its sale. In other words, if the

sale had been valid, the purchaser would have been invested with such title as the chancery court undertook to divest the parties alleged to be the owners of, in the proceedings resulting in the sale, and one who bought at a sale otherwise invalid would, by the payment of the purchase money—the sale having been made in good faith, and the purchaser having possession of the property for two years—have the same title he would have obtained had the sale been valid and regular in all particulars.

In this case now before us there was no efficacious effort by the decree to denude Pennington of his title as mortgagee. He was neither a proper nor a necessary party to the petition to partite the land, nor did the decree, nor any of the proceedings, from the filing of the bill to the making of the deed under the decree confirming the sale, seek to affect any title other than that which the mortgagor had. In a sense Evans, the mortgagor, had an equity of redemption, or he had the legal title to the land subject to defeat by the foreclosure of the mortgage which he had given; having heretofore ascertained that the mortgage was not simulated, and that the proceedings in the partition did not in any wise affect the title or the rights of the mortgagee, Pennington, we will unhesitatingly say that the legislature has never intended to set aside and nullify the general Statute of Limitations as to mortgages, which is that when the debt is barred the mortgage is barred; and in this case the debt accrued January 12, 1921. Six years thereafter, January 12, 1927, the debt would have become barred but for the filing of the bill by Pennington in this case. The bar set up by the statute, here invoked, can only be effective as against parties to the record or their privies, or those whose title depends upon the validity or invalidity of the decree of sale. In this sense we recur to the language used by Judge SIMRALL in the case of Hazlehurst Lodge, supra,

"The heir, or other person claiming derivatively from the decedent," are subject to the rigid bar of this statute, and, attacking the title, are not permitted to inquire into the proceedings anterior to the sale.

So far as Jordan v. Bobbitt, supra, is concerned, the expressions we have quoted were specifically applied to the case before the court. The chancery court could subject lands which would go to a reversioner to the payment of the ancestor's debts; and the expression of Judge CALHOON, in which he does substitute one for ten, was applied directly to the case then before the court.

We have seen that this legislation was initiated in the statute quoted from Hutchinson's Code, supra, in the effort to correct an evil then existing with reference to heirs of property by the probate court; and that the court has never applied it save to those whose title was directly affected by the decree of sale, and that the statute has been re-enacted several times with this construction placed upon it by this court.

In the case before us the Statute of Limitations cannot be invoked to bar the right to foreclose the paramount lien of Pennington. He has a right to foreclose his mortgage; he has a right to have it foreclosed, unaffected by the deeds of Mrs. Purcell. The two-year Statute of Limitations does not apply here.

What we have said with reference to the sale to enforce the equitable lien applies to the execution sale, if, indeed, an execution sale is within the terms of the statute.

This case will be reversed and remanded, with instructions to the court below to grant the relief prayed for by the appellant, Pennington, in his bill, and to proceed further in accordance with this opinion.

Reversed and remanded.