# Hubbard *v.* Massey *et al.*

(In Banc. Oct. 13, 1941. Suggestion of Error Overruled Nov. 10, 1941.)

[4 So. (2d) 230. No. 34544.]

(In Banc.   Nov. 10, 1941.)

[4 So. (2d) 494.   No. 34544.]

Edwards & Edwards, of Mendenhall, and R. C. Russell, of Magee, for appellant.

98

Hilton & Kendall and **L. F. Easterling**, both of Jackson, for appellee.

**Hilton & Kendall** and **L. F. Easterling,** for appellee, on suggestion of error.

102

Argued orally by **J. P. Edwards**, for appellant, and by **Jas. T. Kendall**, for appellee.

**Roberds, J.**, delivered the opinion of the court.

On December 30, 1938, Mrs. Nannie Singletary, the widow, and Mrs. Tommie Singletary Massey, claiming to be the legally adopted daughter, with right of inheritance, of J. T. Singletary, deceased, and as his only heirs at law, filed a bill in the Chancery Court of Simpson County against Scott Hubbard and R. L. Everett, seeking to set aside a sale of a hotel in Magee, Mississippi, made May 27, 1933, under a deed of trust foreclosure proceeding in that court, and to establish title to the property in themselves, and for an accounting of rents and profits, the hotel having been purchased at the foreclosure sale by Hubbard, the mortgagee.

The bill charged that (1) the Singletary estate was not indebted to Hubbard at the time of the sale; (2) that the sale was void because fraudulent, and also because Mrs. Singletary and Mrs. Massey were not parties to the bill as individuals and heirs of J. T. Singletary; (3) that no consideration was paid by Hubbard; and (4) the publication by the commissioner of the notice of sale was insufficient in law.

Hubbard, in his answer, took issue on all of these propositions, and further set up that both complainants were estopped to bring the suit; that the suit was barred by section 2315, Code of 1930; that Mrs. Massey was not legally adopted and was not an heir of J. T. Singletary; that complainants, in no event, could maintain the suit without first tendering the debt, and, by a plea filed later, that the right to sue, if such right existed, was in the administratrix of the estate, and not in the complainants.

Everett adopted, in substance, the contentions of Hubbard, but made his answer a cross-bill against Hubbard for the purpose of settling other matters between them.

The Chancellor dismissed the bill as to Mrs. Singletary, but set aside the sale as to Mrs. Massey, holding that Mrs. Massey and Hubbard were tenants in common of, with equal rights in, the property, and that she was entitled to one half of the rents from, and chargeable with half of the taxes and improvements paid and made on, the property since the purchase by Hubbard, and appointed a master to state an account between them, which was done. From this decree Hubbard appeals and Mrs. Singletary cross-appeals, and Mrs. Massey cross-appeals from the confirmation of the report of the master. The issues between Hubbard and Everett were pretermitted for later hearing.

On September 5, 1925, Mr. and Mrs. Singletary executed a promissory note to Hubbard for $6,000, borrowed money, due September 15, 1926, and also a deed of trust on the hotel, the property of Mr. Singletary, to secure the payment of the note. Mr. Singletary operated the hotel,

and he and Mr. Hubbard were close friends. There were a number of loan transactions between them from that time to the date of the death of Mr. Singletary, intestate, May 21, 1932.

Mrs. Singletary was appointed administratrix of his estate. On her report the court, by decree, declared the estate insolvent, and the administratrix took charge of the hotel as part of the administration. She lived in and operated it for seven months, losing money, and then, by authority of the court, rented it out for fifty dollars per month. The court allowed the widow $1,200 for a year's support, and made this a charge against the hotel property, and also authorized and directed her to carry insurance on the hotel, and to borrow money thereon, if she could, with which to pay taxes and insurance premiums, which apparently she was unable to do. This situation continued until Hubbard took possession under his purchase at the foreclosure sale.

On August 24, 1932, Hubbard filed a bill in said Chancery Court to foreclose his deed of trust, making Mrs. Singletary defendant as administratrix, but not as maker of the note or as heir of Singletary; nor was Mrs. Massey made a defendant. Hubbard was acquainted with Mrs. Massey, but he did not know there had been an adoption proceeding. The administratrix answered the bill, and the court adjudicated that the "estate" of J. T. Singletary was indebted to Hubbard in the sum of $4,000 and $400 attorney's fees, all evidenced by, and included in, the foregoing note, and secured by said deed of trust; and that Hubbard held a valid and enforceable lien on said hotel to secure these amounts, and was entitled to have the property sold under such lien; appointed a commissioner and directed him to sell the property, and out of the proceeds first to pay the court costs; then to pay Hubbard $4,400 "in event so much is realized at said sale . . ." But, "by agreement of all parties to said suit that said commissioner shall not sell said land hereinabove described till after the expiration of twelve

months from the date of this·decree, unless by a decree of this court previously ordered on the administration of said estate and the said Scott Hubbard . . .''

About May 11, 1933, it was discovered that the time for redeeming this hotel from previous tax sales would expire June 7, 1933, and, if not redeemed, Hubbard would lose his security and the estate its equity, if any, in the property. Hubbard, by petition, made this known to the Chancellor. Notice was given to the administratrix, and by agreement of all parties the court ordered the commissioner to proceed immediately with the sale of the property, which he did, the sale taking place May 27, 1933. The commissioner reported the sale to the court. The administratrix filed an answer, and there appears to have been an issue (1) whether the furniture, fixtures, etc., in the hotel were included in the trust deed, and (2) whether a fair and reasonable price had been bid for the property. The court held that the furniture, fixtures, etc., were not included in the trust deed, but that the bid of Hubbard of $4,400 and the payment ''of all taxes now due on said property, . . .'' was a fair price, and ordered the commissioner to execute a deed to Hubbard upon his complying with his bid.

Hubbard paid some $1,700 in back taxes, the fees and costs, and credited the debt with the balance of his bid.

It might be stated here that no contention is made on this appeal that the sale was invalid because of the length of time it was advertised.

Hubbard took charge of the property as owner thereof, and has used and operated it, making improvements thereon, until this time.

June 14, 1932, the Chancery Court of that county removed generally the disability of minority of Mrs. Massey, and she became of age by nature about December, 1934.

Mrs. Singletary and Mrs. Massey, before and since the foreclosure, have resided in Magee, where the property is located, and have had full knowledge of the purchase,

possession and use of the hotel by Hubbard. Mrs. Massey accompanied Mrs. Singletary to the trial of the foreclosure issues and advised with her on these matters.

In August, 1938, Mrs. Singletary learned of an agreement between Hubbard and Everett and one Jones, dated November 16, 1932, undertaking to adjust and settle their respective claims with each other, and which dealt with their claims against the Singletary estate. She conceived the idea that this resulted in some fraud being practiced in the foreclosure proceedings, and thereupon the present bill was filed. The Chancellor correctly found that neither in its nature nor in its result was this contract a fraud on the rights of the complainants.

Since the estate had been declared insolvent, and the real property was in the possession of the administratrix, and she was a party to the foreclosure proceeding contesting the debt and the lien on the property, as was her right and duty under section 1679, Code 1930, it is very doubtful whether the statute of limitation was operative during the pendency of this litigation, in view of section 1643, Code of 1930, charging the lands of decedent with his debts if the personalty is insufficient to pay them, and section 1691, said Code, empowering the administrator, upon authority of the Chancery Court, to sell the land for such purpose, although it is not necessary for us to decide that question. Bell v. Clark, 71 Miss. 603, 14 So. 318; Matthews v. Matthews, 66 Miss. 239, 6 So. 201. But whether barred at law or not, this Court has uniformly held that in equity "the only right or remedy of the mortgagor or those claiming under him is to redeem the land from the mortgage indebtedness." Wirtz v. Gordon et al., 187 Miss. 866, 184 So. 798, 802, 192 So. 29. The Court in the Wirtz case further said: "This rule, that the mortgagee cannot be deprived of possession by the mortgagor till the debt is paid is applied in cases where the debt secured by the mortgage is barred by the statute of limitations."

In Wall v. Harris, 90 Miss. 671, 44 So. 36, this language

was used: "It would shock the conscience of a court if this beneficiary in peaceable possession should be required to give up the land and appellants be permitted to hold to that, and yet to avoid payment of the debt." See Lucas et al. v. American Freehold Land Mtg. Co., 72 Miss. 366, 16 So. 358; Nash v. Smith, 133 Miss. 1, 96 So. 516. It would indeed be a travesty on justice to permit an heir of a mortgagor to stand by until the mortgage debt was barred and then recover the mortgaged property, which accumulated rentals thereon, from the creditor who had, in good faith and for a fair price, purchased the property at the foreclosure sale, and who was in peaceable possession thereof, without being required to pay the debt. Other authorities on this point are cited in the able opinion in the Wirtz case.

Hubbard being entitled to his debt, his payment of delinquent taxes and costs, and credit on the debt of the remainder of his bid, was a payment of the consideration under section 2315. But it is said that Mrs. Singletary and Mrs. Massey were not parties to the foreclosure proceeding, and for that reason are not within the bar of the two-year statute prescribed by section 2315, which reads: "An action shall not be brought to recover any property hereafter sold by order of a chancery court, where the sale is in good faith and the purchase-money paid, unless brought within two years after possession taken by the purchaser under such sale of the property."

Under the circumstances here they did not have to be parties.

In Morgan v. Hazlehurst Lodge, 53 Miss. 665, quoted in Pennington v. Purcell, 155 Miss. 554, 567, 125 So. 79, 83, the Court, after saying the statute is remedial and designed especially to cure defects in probate sales by executors, administrators and guardians, further said: "The statute proposed to cure the evil by applying a short limitation where the sale was free from fraud, and the purchaser in good faith had paid his money; so that if the purchaser lost his land, he might indemnify himself

in some mode or other. The heir, or other person claiming derivatively from the decedent, if he relies on the invalidity of the sale as the ground of recovery, must bring his action to recover the property within one year [now two years] . . . The statute, in effect, says to such claimants [heirs of decedent], 'You shall not recover the property' on the ground of the invalidity of the sale, if, in fact, it was made in good faith and the purchase-money has been paid, unless you bring suit . . .'' within the time specified in the statute. ''The statute is remedial and curative, has its origin in that policy, and, if the words will admit of it, should receive that construction which will accomplish the end aimed at.''

In Neely et al. v. Craig et al., 162 Miss. 712, 139 So. 835, 837, the Court said the Lodge case, supra, held ''that the statute was meant to cure all defects in the probate sale, no matter from what cause, whether before or after the decree, unless the heir brought his action within the prescribed time.'' In Summers v. Brady, 56 Miss. 10, the Court held that heirs of an ancestor whose land had been sold by an administrator under an order of the Chancery Court, were within the statute even though notice was not given them, and this includes minors and married women. See Hall v. Wells, 54 Miss. 289. In other words, the heir or other person claiming derivatively from the decedent are subject to the rigid bar of the statute, whether parties to the foreclosure proceeding or not. Pennington v. Purcell, 155 Miss. 554, 556, 125 So. 79.

The court had jurisdiction of the subject matter. Mrs. Singletary and Mrs. Massey are within the equitable principle, ''He who seeks equity must do equity,'' and are within the limitation prescribed by section 23-15.

Reversed on direct appeal, and judgment here for appellant Hubbard; dismissed on cross-appeals. Remanded for adjudication of issues between Hubbard and Everett.

**Smith, C. J.**, concurs in the result.

**Griffith, J.**, delivered the opinion of the court on suggestion of error.

In arriving at and rendering our original opinion we relied in a large part upon the findings of fact made by the chancellor upon request of the parties and embodied in the record, as required by statute. Appellant did not give the notice to the court reporter to transcribe the notes of the evidence, and there is in the record no transcript of the evidence. Appellee again urges the contention that in the absence of the transcript of the evidence we cannot look to the findings of fact made and filed by the chancellor, but must presume that the evidence, if before us, would support the general decree rather than the chancellor's finding upon the facts which forms the basis of his general decree. In this appellee is mistaken, and because there is thus presented a procedural matter of importance in view of the new statute, we respond to the point.

When equity and equity procedure became by adoption a part of the jurisprudence of this country, the body of the decree consisted of five parts, one of which was the recital part, in which it was required that the leading facts upon which the decree rests should be set forth therein. 19 Am. Jur., p. 285; Handy v. Cobb, 44 Miss. 699, 702; 21 C. J., p. 656. In the course of time it became the rule in most of the states, including our own, that the recital part might be largely omitted, but this has been merely permissive and it has nevertheless remained in the rule that it is proper, should the court so elect, to embrace in the body of the decree a definite finding of the ultimate facts as to each litigated issue or salient point of fact; and although such elaborated decrees are not now ordinarily seen, they are yet so often used in this state as to disclose that they are still a recognized part of our practice in equity cases. And when such findings of facts are embodied in a decree, they become, of course, as much a part of the decree as any other feature of it,

and in consequence are as much entitled to the presumption of correctness as any other part.

It was because of the frequent omission of what, under the traditional practice, was required to be embraced in the recital part of the decree that Chap. 252, Laws 1934, was enacted. See General Tire & Rubber Co. v. Cooper, 176 Miss. 491, 165 So. 420, 169 So. 801. The effect of that statute, when the request for the finding of facts has been duly made and such finding by the chancellor has been entered of record, is to give the same status to the findings as if they had been incorporated in the recital part of the body of the decree, with the consequence that the findings so made of record carry the same presumption of correctness; and we must accept them as such on appeal in the absence of the transcript of the evidence. And it is far too late to contend that an appeal may not be taken unless a transcript of the evidence is included in the record. See, for instance, Redmond v. City of McComb, 192 Miss. 61, 4 So. (2d) 494, this day decided.

We have not overlooked the argument by appellee that only ten days after the adjournment of court is allowed to give the notice to the court reporter to transcribe the notes of the evidence; that during that time the successful party in the trial court will not know whether the loser will appeal at all and when the latter allows the ten days to go by without notice of appeal or notice to the court reporter, and thereafter takes an appeal without a transcript of the evidence, the appellee is thereby deprived of whatever advantage the evidence might afford him on the appeal.

Suppose the findings of fact had been actually embraced in the body of the decree and appellant had appealed without a transcript of the evidence—the appellee would be confronted with the same situation. Or suppose that instead of appealing the losing party had filed within two years a bill of review for errors apparent on the face of the record. There the entire record, which would include the finding of facts, is examined, without

reference to the evidence, and if there be error of law apparent on the face of the record and this error is such as to disclose that the decree, as made, is erroneous, the decree will be vacated; and if the trial court should refuse to do so, an appeal may be taken to this Court. Denson v. Denson, 33 Miss. 560, 563; Gilleylen v. Martin, 73 Miss. 695, 698, 19 So. 482. In Enochs v. Harrelson, 57 Miss. 465, 468, it is stated that when upon a bill of review and an examination of the record—which never includes an examination or consideration of the evidence —there is found to be error apparent, the original decree will be set aside and thereupon the decree which should have been rendered at first may be rendered without further proceedings, unless there be shown some good reason against that course. We suppose it will hardly be contended that the powers and duties of this Court as to what shall be done upon the record on appeal are any less than what the trial court could and should do upon the same record under a bill of review, or any less than what we could and should do upon an appeal from a decree rendered under a bill of review. In such cases the record of the evidence is not before the court; appeals may be taken without a transcript of the evidence; and if in these matters the law is defective, that is for the legislative department to remedy.

Appellee again urges the vital point and its several material bearings that Mrs. Singletary was not a party to the foreclosure proceedings in her individual capacity, as she should have been, but was made a party only as administratrix. She nevertheless answered in the case, took an active part as a litigant therein, making then no point that she should have been sued in a different capacity, and we now adopt the language found at page 149, Miss. Chan. Prac., that "if a person submits himself to the jurisdiction of the court and litigates throughout in any particular capacity, he will not be permitted after an adverse result to impeach the decree as to himself on the ground that his capacity was in fact different."

Suggestion of error overruled.