**FEDERAL LAND BANK OF JACKSON, Plaintiff,**

v.

**Ottis O. KENNEDY and Lowell H. Becraft, Jr., Defendants.**

**No. WC85–132–NB–D.**

United States District Court, N.D. Mississippi, W.D.

June 11, 1987.

Joshua J. Wiener, Jackson, Miss., for plaintiff.

Gary L. Carnathan, Tupelo, Miss., and Lowell H. Becraft, Jr., Huntsville, Ala., for defendants.

## MEMORANDUM OPINION

BIGGERS, District Judge.

The present cause comes before the court on the motion of plaintiff, Federal Land Bank of Jackson, for partial summary judgment on the issue of liability against the defendants, Ottis O. Kennedy and Lowell H. Becraft, Jr. Having considered the pleadings, memoranda, and affidavits submitted by the parties hereto, and being fully advised in the premises, the court is now in a position to rule on the motion.

## I. Introduction

The Federal Land Bank of Jackson (formerly the Federal Land Bank of New Orleans) (hereinafter referred to as "FLB") filed this action against the defendants Ottis O. Kennedy (hereinafter referred to as "Kennedy") and Lowell H. Becraft, Jr. (hereinafter referred to as "Becraft") on June 17, 1985. This case arises out of a loan transaction between FLB and Kennedy originating in July, 1981 and secured by a deed of trust on Kennedy's property in Pontotoc County, Mississippi. Kennedy defaulted on the loan and FLB foreclosed under its deed of trust in September, 1984. Kennedy thereafter refused to surrender possession of the property following the foreclosure and continues to occupy the subject property. Immediately after the foreclosure sale, at which FLB was the high bidder, Kennedy and Becraft placed of record quitclaim deeds and an instrument entitled "Declaration of Land Patent" which purports to vest title in Kennedy. FLB's complaint seeks judicial confirmation of its title, cancellation of the Kennedy "patent" and the quitclaim deeds, injunctive relief requiring Kennedy to immediately vacate the subject lands and granting possession to FLB. FLB also seeks an award of damages arising from Kennedy's wrongful holdover possession and slander of title, reasonable attorney's fees, punitive damages and costs.

After this court denied defendants' motion to dismiss for lack of subject matter jurisdiction, Kennedy and Becraft filed separate answers to the complaint. Kennedy's answer asserts affirmatively that the "Declaration of Land Patent" and quitclaim deed vest him with fee simple title. By way of a counterclaim Kennedy asserts that FLB's deed of trust and foreclosure are invalid by virtue of alleged Truth in Lending Act violations related to the execution of the July, 1981 promissory note. Kennedy thus seeks a declaratory judgment holding that FLB's loan and deed of trust are null and void, in violation of public policy, and in violation of the Truth-in-Lending Act. In addition, by way of response to plaintiff's motion for partial sum-

mary judgment, Kennedy asserts that the alleged deficient acknowledgment on the "Substitution of Trustee" document and an error contained in the notice of sale render invalid the trustee's deed held by FLB.

In response, FLB asserts that (1) the loan in question was exempt from the Truth-in-Lending Act disclosure requirements since the loan was primarily for agricultural purposes, (2) the Truth-in-Lending Act claim is barred by the applicable statute of limitations, (3) the acknowledgment is plainly sufficient, and (4) the error in the notice of foreclosure sale was not material. Based on the facts outlined below, the court finds defendants' contentions to be unmeritorious and that judgment should be entered for plaintiff FLB.

## II. Findings of Fact

The following material facts are not in dispute. FLB is a federally chartered instrumentality of the United States, established pursuant to the Federal Farm Loan Act, superseded by the Farm Credit Act of 1971, as amended, 12 U.S.C. § 2001, *et seq.* Its operations are governed and regulated by federal statutes and by rules and regulations promulgated by the Farm Credit Administration, which is an independent agency within the executive branch of the United States Government. FLB makes real estate mortgage loans within the State of Mississippi pursuant to the powers and authorities granted it by federal statutes, rules and regulations.

Defendant Kennedy has until the end of 1984 engaged in farming in Pontotoc County, Mississippi, raising soybeans on an 80–acre tract adjacent to his home, non-adjacent tracts located elsewhere in Pontotoc County and on land leased from others. Defendant Becraft is an attorney in Huntsville, Alabama.

Kennedy first borrowed money from FLB in 1965 in order to finance the construction of his home. That loan was substantially repaid. In 1978, Kennedy received a second loan from FLB in the amount of $20,000.00 in order to finance the purchase of 36 acres adjacent to his farm. This 36–acre tract is now a part of the 80–acre tract mentioned above. Kenne-dy acquired the land for the purpose of adding it to his farm land and raising soybeans thereon. Kennedy subsequently borrowed money from FLB to refinance a purchase of farmland from a Mrs. Carmack in Pontotoc County.

In July, 1981, Kennedy applied for and received a new loan from FLB in the amount of $146,000.00. The loan application which Kennedy signed and submitted to FLB states that the loan purpose was considered to be "primarily for agricultural purposes." In actuality, $77,647.00 was to be used to refinance existing FLB indebtedness, all of which was in connection with previous farmland acquisitions. The remaining $60,000.00 was used to satisfy a final property settlement executed between Kennedy and his wife pursuant to a divorce action. The $60,000.00 payment enabled Kennedy to retain his land and to continue his farming operations.

At the July, 1981 loan closing, Kennedy executed both a variable interest rate promissory note evidencing the $146,000.00 FLB loan and a deed of trust securing payment of the note. The FLB note provides for 30 consecutive annual installments payable on the first day of April. FLB did not disclose to Kennedy at this time that he had a right to rescind the transaction within a specified period of time; nor did FLB include a disclosure statement with the documents provided to Kennedy at the loan closing.

Kennedy failed to make the April 1, 1984 payment either on the date it was due or within the extension subsequently granted by FLB. As a result of the default, FLB declared all unpaid principal, interest, and other charges immediately due and payable and proceeded with foreclosure. On July 9, 1984 attorney Dudley R. Carr, representing FLB, wrote to Kennedy informing him that FLB was instituting foreclosure proceedings. The following day, W. Brian Babin, as Vice-President, Secretary, and General Counsel of the Federal Land Bank of New Orleans, executed a "Substitution of Trustee." The acknowledgment states that W. Brian Babin signed and delivered the instrument "as Vice-President, Secretary and

General Counsel of the Federal Land Bank of New Orleans, a corporation."

Mr. Carr advertised the foreclosure sale of the subject land by publishing notice of the foreclosure for three consecutive weeks in the *Pontotoc Progress* as required by the deed of trust and by law. The notice of foreclosure was also posted at the Pontotoc County Courthouse. The notice provided that the sale would be conducted within legal hours on September 13, 1985. The notice further provided that the "Substitution of Trustee" could be found in the records maintained at the courthouse in "Book 419 at page 60." This recitation was in error since the substitution was in fact recorded in Book 419, page 603. Kennedy read the notice in the newspaper and attended the sale.

The foreclosure sale was held as scheduled on September 13, 1985 on the steps to the Pontotoc County Courthouse. According to Kennedy, approximately 100 people attended the sale. Mr. Carr read the notice, identified the lands, and then called for bids on the property. Defendant Becraft was the first to bid by offering $110.00 in silver coins. FLB bid the sum of $158,344.38, which was the amount of the indebtedness and expenses. No other bids having been received, Mr. Carr struck the lands off for sale to FLB and the lands were conveyed to FLB by trustee's deed on that same date.

Following the sale, the defendants filed for record a quitclaim deed dated September 18, 1984, by which Becraft purported to convey the subject lands of Kennedy. Subsequently, on January 26, 1985, Kennedy filed for record a document entitled "Declaration of Land Patent," to which are attached as exhibits a quitclaim deed of the same date from Kennedy to himself, and a copy of the original United States Government patent to the land in question.

### III. Conclusions of Law

#### A. Truth-in-Lending Act

At the time the subject FLB loan was closed on July 22, 1981, the Truth-in-Lending Act, 15 U.S.C. § 1603, provided in pertinent part as follows:

This subchapter does not apply to the following:

. . . . .

(5) Credit transactions *primarily* for agricultural purposes in which the total amount to be financed exceeds $25,-000.00 [emphasis added].

■ By using the word "primarily" the statute recognizes that a single loan may have more than one purpose. The courts have accordingly found loans to be "primarily" for an exempt purpose, and therefore totally exempt from the requirements of the Truth-in-Lending Act, where more than half of the proceeds were devoted to the exempt purpose. *See Bokros v. Associated Finance, Inc.*, 607 F.Supp. 869, 871–72 (D.Ill.1984); *In re Klutzaritz*, 46 B.R. 368, 370 (Bkrtcy.1985). In the instant action, more than half of the July, 1981 loan proceeds were used to refinance existing FLB loans which were used by Kennedy to purchase land for farming. The provisions of 15 U.S.C. § 1602 defines "agricultural purposes" to include acquisitions of farm land. Thus, since the FLB loan transaction in question was "primarily" for agricultural purposes, it is exempt from the provisions of the Truth-in-Lending Act.

Even if this court were to find that the FLB loan transaction in question was not exempt from the Truth-in-Lending Act, and even if FLB violated the Act, the remedies afforded Kennedy under the Act, that is, claims for rescission under 15 U.S.C. § 1635 and/or for statutory damages and penalties under 15 U.S.C. § 1640, are now time barred. Section 1635 provides that the right of rescission expires three years after the date on which the loan transaction is consummated, or upon the sale of the property, whichever occurs first. Further, section 1640 provides that claims for statutory damages, penalties and attorney's fees must be brought within one year from the date of the occurrence of the violation. Since the FLB loan in question was closed in July, 1981, all claims under the Truth-in-Lending Act would have expired in July, 1984. The Act therefore provides no support for Kennedy's attack

on the FLB's deed of trust and foreclosure, or for his own claim of title.

### B. Adequacy of the Corporate Acknowledgment on "Substitution of Trustee"

█ Kennedy relies upon *White v. Delta Foundation, Inc.*, 481 So.2d 329 (Miss. 1985) in support of his claim that FLB's Substitution of Trustee contains a defective corporate acknowledgment. In *White*, the Supreme Court of Mississippi held that any official acknowledgment for public record of a corporate document should in some manner make it clear that it is the corporation executing the instrument by and through an authorized officer. *White*, 481 So.2d at 333. It is the court's opinion that FLB's Substitution of Trustee more than satisfies this standard. The acknowledgment clearly identifies the individual executing the document, his corporate position, and that he was acting in such capacity. The sufficiency of the acknowledgment is therefore beyond peradventure.

### C. Notice of Sale

█ Kennedy attempts to attack the trustee's deed and justify his holdover possession by demonstrating that the Notice of Sale and the Trustee's Deed incorrectly set forth the page number in Book 419 where the Substitution of Trustee could be found. The Mississippi Supreme Court has declared foreclosures void, however, primarily in instances where the notice of sale misdescribed the subject property. *See, e.g., Seal v. Anderson*, 235 Miss. 249, 108 So.2d 864 (1959); *Hancock v. Pyle*, 191 Miss. 546, 3 So.2d 851, 853 (1941). The *Seal* court stated:

> Manifestly, the objects to be accomplished by the notice of sale are to advise the public of what is to be sold, and the time when, and the place where, and the terms upon which, it may be brought; an the essentials of a notice of sale under a deed of trust are therefore a statement of the time, place, and term of sale, and such a description of the property to be sold as, if read by persons familiar with the neighborhood, will advise them of what is to be sold, and upon what terms it can be bought, and advise them to attend the sale as prospective bidders, should they feel an inclination to invest in the property sold.

108 So.2d at 866. FLB's notice of sale contained all of the essentials stated above.

In order to determine whether the notice of sale was nonetheless fatally defective, despite having disclosed all of the essentials detailed above, we must ascertain whether a layman of average intelligence and business prudence, armed with the knowledge imparted in the notice of sale, would consider a bid unsafe. *See Federal Land Bank of New Orleans v. Collom*, 201 Miss. 266, 28 So.2d 126, 128 (1946). In the case *sub judice* the notice gives the correct name of the county, Pontotoc, and of the substituted trustee, Dudley R. Carr. It gives the correct name of the mortgagee, Federal Land Bank of New Orleans. Most significant, the notice gives the correct date of the Substitution of Trustee instrument, July 10, 1984, and the correct book number where it is recorded, 419. With this information, a layman of average intelligence and business prudence could easily find and examine the Substitution of Trustee instrument. On doing so, such a person would find that the substitution was properly done and properly recorded. No reasonable person could conclude, therefore, that the venture was unsafe. Indeed, in Mr. Kennedy's estimation, over 100 people attended FLB's foreclosure sale. Although the notice of sale did contain an error, the error was minor and did not amount to the type of error which would likely deter or depress bidding at the sale, thus causing the sale's invalidation.

### D. The Kennedy Declaration of Patent and Quitclaim Deeds

█ Kennedy's answer and counterclaim aver that his "Declaration of Land Patent" and quitclaim deeds vest him with fee simple title to the subject property. It is suggested that Becraft was the true purchaser at FLB's foreclosure sale because he bid $110.00 in silver coins, or in Kennedy's own words "lawful money," while FLB representatives had no cash at the sale. It is well settled, however, that a mortgagee may "bid in" the amount of its

indebtedness and expenses at a sale advertised as a "cash sale." *See Pennington v. Purcell*, 155 Miss. 554, 125 So. 79, 82 (1929). Moreover, the trustee did not accept Becraft's bid, take any of his silver, or execute a deed to Becraft. The Becraft quitclaim deed is therefore wholly outside the chain of title, is irrelevant and should be cancelled as a cloud upon FLB's title.

Regarding the Declaration of Land Patent, Kennedy states that a land patent is the "highest form of title." Kennedy acknowledges that a federal land patent was issued in 1838 by the United States Government to Mr. Samuel Hosner, and that the federal government no longer had title to convey after that date. He also concedes that the Declaration of Land Patent does not purport to be a grant from the federal government, nor is there any indication on the face of the document that it is a form prepared, used, or executed by the United States Government. The instrument bears Kennedy's signature alone.

Pursuant to 43 U.S.C. §§ 2 and 15, the Secretary of the Interior or his duly appointed designee has the exclusive authority to issue land patents. The record is devoid of any evidence which would tend to establish that the Secretary has given Kennedy the authority to issue himself a land patent. The Declaration of Land Patent is therefore void insofar as it purports to be a grant from the United States Government and thus constitutes a spurious cloud upon FLB's title to the subject property.

### IV. Conclusion

Given the foregoing, it is the decision of the court that both the Notice of Sale and the sale are free of material defects and that neither the Becraft quitclaim deed nor the "Declaration of Land Patent" and Kennedy quitclaim deed convey any title. These instruments constitute a cloud upon FLB's title and judgment should therefore be entered confirming FLB's title to the lands in question, cancelling the instruments in question, and granting injunctive relief putting FLB in immediate possession of the lands.

Let an order issue accordingly.

### ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In accordance with a memorandum opinion this day issued in the above styled and numbered cause, it is hereby ORDERED:

That the motion for partial summary judgment on the issue of liability filed by the plaintiff Federal Land Bank of Jackson be, and is hereby, GRANTED;

That the subject quitclaim deeds and "Declaration of Land Patent" filed for record by the defendants, Ottis O. Kennedy and Lowell H. Becraft, Jr., are declared to be null and void as spurious clouds on plaintiff's title to the subject property;

That the defendant Ottis O. Kennedy be, and is hereby, ENJOINED from refusing plaintiff Federal Land Bank of Jackson exclusive possession of the subject property; and

That the issue of damages be, and hereby is reserved for trial.