515 So.2d 1200 (1987)
Earl Jackson GREGORY, Jr.
v.
FEDERAL LAND BANK OF JACKSON.
No. 57292.
Supreme Court of Mississippi.
November 25, 1987.
*1201 Gary L. Carnathan, Carnathan, Malski & Ford, Tupelo, for appellant.
Lawrence E. Allison, Jr., Brunini, Grantham, Grower & Hewes, Jackson, Rex F. Sanderson, Houston, Roger K. Meagher, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and GRIFFIN, JJ.
ROBERTSON, Justice, for the Court:

I.
Of late, life has not been kind to this nation's farmers, Mississippi's being no exception. Debt defeated the Monroe County farmer who today seeks to invalidate foreclosure of his land and secure other relief from his creditor the Federal Land Bank. For better or for worse, our law affords him no more favor than the fates. We affirm.

II.

A.
Earl Jackson Gregory, Jr., was born on the farm. In 1967 he purchased fifteen acres of Monroe County farmland. Over the years he added to his holdings, ultimately acquiring some 992 acres  a large main tract where the shop and grain bins were located plus two separate 70-acre tracts. Gregory's debt rose, too. In early 1980 Gregory was past due on his loan with Northeast Mississippi Production Credit System to the tune of almost $300,000. On top of that he owed the Federal Land Bank of New Orleans (now Federal Land Bank of Jackson) (hereinafter "FLB") some $250,000. All Gregory could do was tread water and try to refinance.
On April 30, 1980, Gregory applied to FLB for a loan of $580,000. His loan application stated that his primary occupation was farming, and that his "overall agricultural operation" included 1,092 acres of which he owned 992 acres. Under the heading "Loan Purpose Profile," Gregory requested to borrow $250,000.00 to liquidate or refinance a prior FLB loan, $300,000.00 for refinancing a non-real estate loan, and $30,000.00 to buy stock in the Farm Credit Association and to pay closing costs. Finally, Gregory stated in his loan application: "The total loan purpose is considered to be primarily for agricultural purposes: Yes X No ____."
The loan was approved and then closed on June 20, 1980. On that date, Gregory executed and delivered to FLB a promissory note for $580,000.00 and, as well, a deed of trust covering the lands in Monroe County that are the subject of this dispute. At the land closing, Gregory signed a loan disbursement statement showing that the proceeds were distributed as follows:

 (a) Capitol stock in the association $ 29,000.00
 (b) To liquidate prior FLB loan 247,392.24
*1202 (c) To Gregory and Northeast Mississippi
 Production Credit System [also a part of
 the Farm Credit Association] $299,528.71
 (d) To Gregory and John Sibley 2,750.00
 (e) To the Association 1,329.05
 ___________
 $580,000.00

On the disbursement statement Gregory acknowledged that the loan purpose had not changed from that reflected on the loan application.
As fate would have it, Gregory fell into arrears on this new loan and later defaulted. In early September, 1984, the FLB commenced foreclosure. Sale was held on October 5, 1984, at which time the FLB submitted the highest bid and a Trustee's Deed was drawn up conveying the lands to the FLB. However, Gregory refused to vacate the lands, apparently concerned for crops still in the fields.

B.
On January 8, 1985, the FLB filed suit against Gregory seeking to remove Gregory from what used to be his property plus damages for his holding over. Gregory answered and asserted a counterclaim under the Truth In Lending Act. On March 20, 1985, the FLB moved for summary judgment, which was granted on September 24, 1985. An evidentiary hearing on damages was held on October 21, 1985, and on October 24, 1985, the Circuit Court awarded $17,000.00 to the FLB for damages and attorneys fees and directed the Sheriff of Monroe County to place the FLB in immediate possession of the land.
From this judgment, Gregory appeals, assigning the following as error:
(1) The lower court erred in granting Appellee's motion for summary judgment and granting Appellee possession of the property in question.
(2) The lower court erred in the assessment of damages from Appellant to Appellee.

III.

A.
Gregory first argues that the foreclosure was ineffective because the acknowledgment on the substitution of trustee was invalid. It appears that on July 18, 1984, the FLB executed an instrument substituting Rex Sanderson as trustee in the June 20, 1980, deed of trust. The substitution instrument was signed, notarized and on the 8th of August, 1984, recorded. Gregory claims that FLB's corporate officer failed to state that he signed and delivered the document "for and on behalf of corporate holder after first being duly authorized to do so."
In White v. Delta Foundation, Inc., 481 So.2d 329 (Miss. 1985), we held that any official acknowledgment of a corporate document to be filed for public record should make clear that it is the corporation that is executing the document and that this is being done by and through an authorized officer. White, 481 So.2d at 333. See also Griffis v. Martin Oil Co., 127 Miss. 606, 609-10, 90 So. 324, 325 (1922); Federal Land Bank of Jackson v. Kennedy, 662 F. Supp. 787, 791 (N.D.Miss. 1987).
The substitution of trustee before us reflects on its face that W. Bryan Babin signed and delivered the same "as Vice President, Secretary and General Counsel of the Federal Land Bank of New Orleans, a corporation." This language suggests to us quite plainly that Babin was acting as a corporate officer and not in his individual capacity. This is sufficient. That additional language may have made the point more clear does not mean that it is not clear. The assignment of error is denied.

B.
Gregory asserts the Federal Truth In Lending Act, 15 U.S.C. § 1601, et seq. in support of his next challenge to the legal effectiveness of the foreclosure sale. He argues that the transaction was not one primarily for agricultural purposes and thus excluded from the Truth In Lending Act, as FLB contends. Instead, the 1980 loan was needed "to prevent ultimate foreclosure by PCA and to obtain money to buy a house." Gregory cites Anderson v. Lester, 382 So.2d 1019 (La. App. 1980), as a case in which the Court looked to the primary purpose of the debtor in procuring the loan *1203 to determine whether or not it was exempted from the Federal Truth In Lending Act.
To be sure, the Truth In Lending Act is one of those federal enactments which is subject to a regime of concurrent federal and state jurisdiction. Truth In Lending claims and defenses are well within the competency of our courts. Brown v. Credit Center, Inc. 444 So.2d 358, 366 (Miss. 1983); Ray v. Acme Finance Corp., 367 So.2d 186, 188 (Miss. 1979); Lewis v. Delta Loans, Inc., 300 So.2d 142 (Miss. 1974).
The short answer, however, to Gregory's Truth In Lending (TIL) defense is that this was and is an agricultural purpose transaction and as such is exempt from the provisions of the Truth in Lending Act altogether. Federal Land Bank of Jackson v. Kennedy, 662 F. Supp. 787, 790 (N.D.Miss. 1987).
Prior to March 31, 1980, "credit transactions primarily for agricultural purposes in which the total amount to be financed exceeds $25,000.00" were exempt. Now, however, the agricultural purpose exemption has been lumped with that for business and commercial loans and no minimum amount is necessary for the exemption to apply. The language presently found in 15 U.S.C. § 1603 reads:
This title [15 U.S.C. §§ 1601, et seq.] does not apply to the following:
(1) Credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes, or to government or government agencies or instrumentalities, or to organizations. [Emphasis supplied]
An exemption also exists for loans over $25,000.00 in which a "security interest is or will be acquired in real property, or in personal property used or expected to be used as the principal dwelling of the consumer." 15 U.S.C. § 1603(3). However, that is a separate exemption which has no bearing on the exemption 1603(1), Business or Agricultural, Etc., loans. "The fact that the credit transaction between the parties was secured by a mortgage on the plaintiff's home does not transform the loan from an exempted transaction to one within the ambit of the Act." Sherrill v. Verde Capital Corp., 719 F.2d 364, 367 (11th Cir.1983).
The only evidence before the Circuit Court suggesting that the 1980 loan was not for an agricultural purpose was Gregory's affidavit. Gregory states that he "entered into this transaction in order to prevent foreclosure by the Production Credit Association (PCA)" on certain of his property and in order to obtain money to buy a house. On the other hand, Gregory's loan application boldly declares that the total purpose of the loan was considered to be "primarily for agricultural purposes." Gregory also signed a deed of trust in which he agreed that all representations made in the loan application were correct and that "the proceeds of this loan will be used solely for the purposes specified in said application." The loan disbursement statement contains the question: "Has loan purpose or amount changed from application?" Gregory checked "No" and signed his name.
FLB aptly replies that, if Gregory did in fact intend to use the loan proceeds to purchase a house, this would have constituted a breach of his obligations under the the loan transaction. Furthermore, such would have rendered his representations in the loan application misrepresentations designed to induce FLB to make the loan. If Gregory misrepresented what it was he intended to do with the FLB loan, he should not now be allowed to profit from it. No man should be allowed to profit from his own wrong. See Riggs v. Palmer, 115 N.Y. 506, 511, 22 N.E. 188, 189 (1889); Cardozo, The Nation Of Judicial Process 41 (1921).
In any event, the record is without contradiction that almost $250,000.00 of the loan went to refinancing a previous FLB loan, and nearly $300,000.00 of the $580,000.00 was paid to Gregory and Northeast Mississippi Production Credit Association. Those loans repaid had been obtained for agricultural purposes. The refinancing of agricultural purpose loans is itself an agricultural purpose. Moreover, the loan does not have to have been exclusively for agricultural purposes to have been exempt *1204 from TIL coverage. See Federal Land Bank of Jackson v. Kennedy, 662 F. Supp. at 790.
On the TIL exemption issue there was no genuine issue of material fact. FLB was entitled to judgment as a matter of law. See Rule 56, Miss.R.Civ.P. We are reinforced in this view by the fact that like questions have been presented on frequent occasions to the federal courts and have almost invariably been disposed of on summary judgment. Wilson v. Prudential Insurance Co. of America, 749 F.2d 502, 504 (8th Cir.1984); Ator v. City Bank & Trust Co., 749 F.2d 498, 500 (8th Cir.1984); Aschoff v. Osmond State Bank, 760 F.2d 201, 202 (8th Cir.1985); Kurkowski v. Federal Land Bank of Omaha, 750 F.2d 723, 724 (8th Cir.1984); Farmer v. First Bank (N.A.)  Pipestone, 760 F.2d 872, 874 (8th Cir.1985); Felt v. Federal Land Bank Association of Belle Fourche, 760 F.2d 209, 210 (8th Cir.1985); Munk v. Federal Land Bank of Wichita, 791 F.2d 130, 131 (10th Cir.1986); Smith v. Russellville Production Credit Association, 777 F.2d 1544, 1549 (11th Cir.1985); K/O Ranch v. Norwest Bank of Black Hills, 748 F.2d 1246, 1248 (8th Cir.1984); and Federal Land Bank of Jackson v. Kennedy, 662 F. Supp. at 790.
The assignment of error is denied.

C.
Gregory's final challenge to the foreclosure sale is that the FLB "created an unlawful debt by requiring [Gregory], as a condition of the loan to buy seemingly nonexistent capital stock."
Under 12 U.S.C. § 2034 "all persons who obtain loans from a federal land bank through a federal land bank association are required to purchase stock in the association in an amount not less than five percent nor more than ten percent of the face amount of the loan."
Further, the borrower is required to pay for such stock in cash by the time the loan is closed... . If the borrower defaults on the loan, the stock may be cancelled for application on the loan.
According to the Loan Disbursement Statement, Gregory paid $29,000.00 for stock in the Association  an amount equal to exactly five percent of the face amount of the loan. The Circuit Court found that the stock purchase violated neither federal nor state law.
We find that federal law provides that "No person but borrowers from the [FLB] shall become members and stockholders of the Association." 12 U.S.C. § 2034. "If the application for membership is approved and if the applied for loan granted  the member of the Association shall subscribe to stock in the Association in an amount not less than five percent nor greater than ten percent of the face amount of the loan as determined by the bank." 12 U.S.C. § 2016 requires that persons availing themselves of services under Title 12 (the Farm Credit System) become "stockholders or members in the FLB Association." Gregory's argument is wholly without merit. See Federal Land Bank of St. Paul v. Anderson, 401 N.W.2d 709, 713 (N.D. 1987) (federal law requires borrowers to purchase stock in a federal land bank association in order to obtain an FLB loan); and Munk v. Federal Land Bank of Wichita, 791 F.2d 130, 132 (10th Cir.1986) (Securities and Exchange Act does not apply to these type transactions).

IV.

A.
Gregory argues that the Circuit Court erred in awarding FLB $17,000 in damages and attorneys fees. The predicate of this argument is Gregory's previously disposed of point that the foreclosure sale was invalid.
Gregory's problem is that he remained in possession of the land for over a year after FLB purchased it at the foreclosure sale. The award of $15,299.70 for the reasonable rental value of the land (the rest, $1730.00, was for attorneys fees) represented less than the smallest value testified to by either the FLB or Gregory himself. We do not understand how the reasonableness of the $17,000 damage award can be disputed by Gregory.

*1205 B.
Finally, Gregory argues that the Circuit Court erred in granting the FLB the production proceeds attributable to the mineral interest which Gregory owned prior to foreclosure. He states that mineral rights may be owned separately from the "land" itself.
If Gregory means that the mineral estate may be severed from the surface estate so that the minerals are owned by one person and the surface by another, then he is correct. In fact, portions of the mineral estate had been severed from the surface of the lands at issue prior to the date on which Gregory executed the deed of trust under which the FLB foreclosed. Since those severed mineral interests were not owned by Gregory when he executed the deed of trust, they were not covered by the instrument and the FLB did not acquire title to them when it foreclosed.
However, Gregory owned portions of the mineral estate when he executed the deed of trust. Since he also owned the surface estate, his mineral interest was not severed from the surface estate. To be sure, he could have reserved that mineral interest to himself when he executed the deed of trust. Had he done so, the interest would not have been covered by the deed of trust. However, he did not sever that mineral interest when he made the conveyance to the trustee for the benefit of the FLB. The deed of trust clearly conveyed and warranted to the trustee the surface estate and Gregory's mineral interests in the various tracts covered by the instrument.
Gregory conveyed and warranted the surface estate and his unsevered mineral interest when he executed the deed of trust. All interests owned by Gregory were conveyed to the trustee by the deed of trust, and all interests owned by him were sold at foreclosure. The Circuit Court correctly held that the FLB acquired title to the surface estate and the mineral interest in question when it purchased the lands at foreclosure. The Court correctly awarded the FLB the production proceeds attributable to that interest subsequent to the date of foreclosure.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.