Larry and Sandra MORTON, Plaintiffs,

v.

RESOLUTION TRUST CORPORATION, as Receiver for Evangeline Federal Savings and Loan Association, and D. Jene Whitecotton, Defendants.

RESOLUTION TRUST CORPORATION, as Receiver for Evangeline Federal Savings and Loan Association, Third Party Plaintiff,

v.

SOUTHERN LAND TITLE SERVICE COMPANY, INC., Defendant.

RESOLUTION TRUST CORPORATION, as Receiver for Evangeline Federal Savings and Loan Association, Plaintiff,

v.

Larry and Sandra MORTON, Defendants.

Civil A. Nos. 2:88–CV–196WS, 2:89–CV–134WS.

United States District Court, S.D. Mississippi, Hattiesburg Division.

Sept. 29, 1995.

James W. Newman, IV, Newman & Newman, Jackson, MS, for Larry Morton, Sandra Morton.

W. Rodney Clement, Jr., John E. Wade, Jr., Brunini, Grantham, Grower & Hewes, Jackson, MS, Lori Williams. Holland, Lori Williams Holland, Jackson, MS, for Resolution Trust Corporation, Receiver for Evangeline Federal Savings and Loan Association.

Carey R. Varnado, Frank D. Montague, Jr., Montague, Pittman & Varnado, Hattiesburg, MS, for D. Jene Whitecotton.

Jay L. Jernigan, Jay L. Jernigan, Attorney, Hattiesburg, MS, for Southern Land Title Service Co., Inc.

### *MEMORANDUM OPINION AND ORDER*

WINGATE, District Judge.

On an earlier day, this case was tried to the court sitting without a jury. During the course of the trial, the court received evidence by way of live witnesses and documentary exhibits. Now, pursuant to Rule 52, Federal Rules of Civil Procedure, this court announces its findings of fact and conclusions of law.

Plaintiffs Larry and Sandra Morton (hereinafter "the Mortons") seek from this court a declaratory judgment and other relief as a result of the defendants' alleged negligence and harm in carrying out a substituted trustee's foreclosure sale of their previously-owned property, once known as the Best Western Peddler's Inn located in Hattiesburg, Mississippi (hereinafter "Peddler's Inn"). Former mortgage debtors, the Mortons contend that the defendants' foreclosure sale of this property was valid and final and, resultedly, that on account of the amount brought by the sale, they (the Mortons) do not owe their mortgagor (Evangeline Federal Savings and Loan Association) any deficiency. Defendant Evangeline Federal Savings and Loan Association disagrees, contending that the Mortons do owe a deficiency based upon a second and subsequent foreclosure sale which brought a lower final bid. According to this defendant, the second foreclosure sale was necessary because of fatal procedural defects which attended the first foreclosure.

Persuaded that the facts and the law favor the Mortons' view, this court finds that defendants' initial foreclosure sale of the Peddler's Inn was valid and final and that the Mortons do not owe any deficiency based upon a second foreclosure sale. Accordingly, this court finds for the Mortons and against Evangeline Federal Savings and Loan, which now in receivership is represented by the Resolution Trust Corporation.

The court further finds the defendants D. Jene Whitecotton and Southern Land Title Service Company to be without liability to the Mortons. These defendants conducted the first foreclosure sale. The Mortons' claim of negligence against these defendants was predicated upon the possibility that this court might find the initial foreclosure sale invalid. Since this court has found otherwise, this court dismisses the Mortons' claims against these defendants.

### *PARTIES AND JURISDICTION*

The Mortons are resident citizens of the State of Arkansas. The defendant D. Jene Whitecotton (hereinafter "Whitecotton" or the "substituted trustee") conducted the foreclosure sale as the substituted trustee on behalf of defendant Evangeline Savings and Loan (hereinafter "Evangeline"), holder of a second mortgage on the Peddler's Inn. Evangeline's bidding agent at the foreclosure sale conducted by Whitecotton was the defendant Southern Land Title Service Company, Inc. (hereinafter the "SLTSC"). During the time in question, the SLTSC was owned and operated by Scott Wheeler. Whitecotton and the SLTSC are residents of Mississippi. Evangeline's principal place of business is in Louisiana and, according to the Mortons, Evangeline was doing business in Mississippi during the time in question. The Resolution Trust Corporation (hereinafter "RTC") took over as receiver for Evangeline on August 18, 1989, and has been substituted as the real

party in interest in this lawsuit. The Peddler's Inn, the property in question, was located at all times relevant to this matter on Broadway Drive in Hattiesburg, Mississippi.

According to the plaintiffs' complaint, jurisdiction over this cause is predicated on diversity of citizenship pursuant to Title 28 U.S.C. § 1332.[1] However, inasmuch as the RTC is an agent for the United States pursuant to Title 12 U.S.C. § 1819,[2] jurisdiction of this court is also based upon Title 28 U.S.C. § 1345.[3]

### PERTINENT FACTS

The parties agree that on December 29, 1983, in order to purchase the Peddler's Inn, the Mortons executed two valid promissory notes, one to Evangeline in the principal amount of $1,800,000.00, and another in the principal amount of $500,000.00 to Deposit Guaranty National Bank, escrow agent for David T. DeBerry, the former owner of Peddler's Inn. This was a "no-cash" transaction. Both notes were secured by a valid deed of trust and a security agreement executed by the Mortons covering real and personal property at the Peddler's Inn. Additionally, the court finds that exhibit P–3 is the Mortons' personal guaranty of the Evangeline $1,800,000.00 loan.

It is undisputed that the Mortons defaulted on the $1,800,000.00 note; that thereafter, one Cordell White, the president of Evangeline at the time in question, executed an "appointment of substitute trustee" document on December 17, 1987; that Cordell White was authorized and had the power to so appoint the defendant Whitecotton to be the substituted trustee; and that a foreclosure sale of the Peddler's Inn was conducted by Whitecotton on January 27, 1988. The parties agree that during this foreclosure sale the defendant Whitecotton accepted a bid for $1,988,857.78 made by Scott Wheeler, owner of SLTSC, the agency Evangeline hired to conduct the January 27, 1988, foreclosure.

According to the Mortons, SLTSC drafted and recorded all of the foreclosure documents regarding the January 27, 1988, foreclosure sale of Peddler's Inn, including the appointment of substituted trustee and the notice of sale. The pertinent land records show that a trustee's deed to Evangeline was filed in the Office of the Chancery Clerk of Forrest County on February 3, 1988. According to the testimony of Larry Morton, an Evangeline ledger card dated February 19, 1988 (exhibit P–23), was stamped "paid" on its front and back, thereby reflecting no further indebtedness by the Mortons. The parties agree that after this foreclosure sale Evangeline took possession of and maintained control over all property at Peddler's Inn, both real and personal, which secured both the $1,800,000.00 and $500,000.00 notes on January 27, 1988.

Then, say the Mortons, on August 17, 1988, W. Rodney Clement, another substitute trustee appointed by Cordell White, purported to conduct a second foreclosure on the same real property described in the Evangeline deed of trust which stood as collateral for the $1,800,000.00 Evangeline note. According to the RTC, on June 27, 1988, a second substitution of trustee appointing W. Rodney Clement was acknowledged by Cor-

---

1. Title 28 U.S.C. § 1332(a) provides in pertinent part:
 (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—
 (1) citizens of different States; ...

2. Title 12 U.S.C. § 1819(b)(1) & (2) provides:
 **(1) Status**
 The Corporation (RTC), in any capacity, shall be an agency of the United States for the purposes of section 1345 of Title 28, without regard to whether the Corporation commenced the action.

 **(2) Federal Court Jurisdiction**
 **(A) In General**
 Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation (RTC), in any capacity, is a party shall be deemed to arise under the laws of the United States.

3. Title 28 U.S.C. § 1345 provides:
 Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

dell H. White on behalf of Evangeline, and the second foreclosure sale was conducted allegedly to correct the discrepancies in the first foreclosure sale. Though hotly contested by the Mortons, Whitecotton and the SLTSC, the alleged discrepancies in the first foreclosure sale according to RTC include an invalid acknowledgement in the first substitution of trustee appointing the defendant Whitecotton, an invalid notice of sale, and a sale conducted in an improperly described location.

This second foreclosure sale also resulted in the Peddler's Inn being resold to Evangeline. But, under this second sale, the real property associated with Peddler's Inn was sold to Evangeline for only $805,000.00. According to the testimony of W. Rodney Clement, this amount represented the value of the Peddler's Inn property less the David T. DeBerry $500,000.00 note.

Thereafter, say the Mortons, on October 7, 1988, Evangeline conducted a public sale of certain personal property pursuant to a September 26, 1988, notice of sale. The parties agree that the notice of sale dated September 26, 1988, lists all of the personal property at the Peddler's Inn subject to the security agreement given as collateral for Evangeline's $1,800,000.00 note. According to the Mortons, the only bid received was that of Evangeline in the amount of $240,000.00. This bid was accepted, and a bill of sale dated October 7, 1988, purporting to convey this personal property to Evangeline was executed.

It is also undisputed that on December 14, 1988, Evangeline transferred a portion of the real property at Peddler's Inn to the Sunburst Bank for $160,000.00. According to the testimony of David T. DeBerry, $112,-000.00 of this sale price was applied to his $500,000.00 note, while $48,000.00 of the sale price was applied to property taxes due and owing. The parties agree that title to the real property securing the $500,000.00 DeBerry note was vested in Evangeline prior to or by December 20, 1988. This is so, say the parties, because Evangeline purchased at the foreclosure sale the real property associated with Peddler's Inn which secured the DeBerry $500,000.00, subject to David T. DeBerry's first mortgage. Then, say the parties, on December 30, 1988, David T. DeBerry executed a document that purported to assign to Evangeline the security agreement and deed of trust DeBerry held as collateral for his $500,000.00 note. The Mortons acknowledge that they were in default on the DeBerry $500,000.00 note.

On April 6, 1989, Evangeline obtained a quitclaim deed from Deposit Guaranty National Bank conveying all right, title and interest of which Deposit Guaranty might be possessed in the security agreement and deed of trust which was assigned to Evangeline by David T. DeBerry on December 30, 1988. Then, a notice of sale was published on May 24, 1989, listing the personal property at the Peddler's Inn subject to David T. DeBerry's Security Agreement and not subject to Evangeline's Security Agreement. A sale was conducted on June 20, 1989, resulting in a purchase price of just over $16,-000.00. This amount, says RTC, was credited to the $500,000.00 note. The parties agree that the personal property described in the notices of sale dated September 26, 1988, and May 24, 1989, constitutes all of the personal property at the Peddler's Inn as of June 20, 1989.

The Mortons and Evangeline have stipulated the following facts:

The parties acknowledge that Evangeline's records reflect that the principal, interest and penalties owed by the Mortons to Evangeline under the $1,800,000.00 promissory note as of January 27, 1988, was $1,988,857.78. However, as a compromise and settlement of certain of the Mortons' claims against Evangeline and for judicial economy, the parties enter into the following stipulation:

1. $1,650,000—Total principal, interest and expenses owed by the Mortons to Evangeline under the $1,800,000 Promissory Note as of January 27, 1988

$ 80,000 —Total interest and expenses owed by the Mortons to Evangeline under the $1,800,000 Promissory Note for the period of January 27, 1988—August 17, 1988

It is stipulated between the parties that the interests and expenses from January 27, 1988—August 17, 1988, are reasonable and they are allocated as follows:

1. Interest: $76,000
2. Attorney Fees: $ 2,000
3. Insurance: $ 1,000
4. Taxes: $ 1,000

2. $495,000 — is the total amount of principal, interest and expenses outstanding on the DeBerry note as of June 20, 1989

According to the Mortons, these stipulations dispose of their claim for usury and their counterclaim for overpayment of interest and application of escrow, and these claims are withdrawn.

### THE FORECLOSURE SALES

The foregoing establishes that there were four foreclosure sales conducted with regard to the real and personal property associated with the Peddler's Inn:

(1) **January 27, 1988**—The first foreclosure sale on Evangeline's $1.8 million note, the sale RTC says was invalid. Over $1.9 million was the bid by Scott Wheeler for Evangeline. The Mortons, Whitecotton, and Scott Wheeler (SLTSC) all claim that this sale should be regarded as valid.

(2) **August 17, 1988**—The second foreclosure sale on the Evangeline $1.8 million note conducted by W. Rodney Clement. The price of $805,000.00 was bid by Scott Wheeler for Evangeline. This sale, says RTC, was de jure.

(3) **October 7, 1988**—Evangeline sold the personal property subject to its $1.8 million note for $240,000.00. RTC says that $805,000.00 + $240,000.00 = $1,045,000.00 subtracted from $1,730,000.00 still owed by the Mortons as of January 27, 1988 = a discrepancy of $685,000.00 on the $1.8 million dollar note.

(4) **June 29, 1989**—Evangeline sold the personal property covered by the DeBerry security agreement and not covered by the Evangeline security agreement for $16,263.44. RTC claims a deficiency on the DeBerry note of $495,000.00 − $16,263.44 = $478,736.56.

According to the RTC, the first foreclosure sale conducted by the defendant Whitecotton is void because the substitution of trustee document was fatally defective and the notice of sale pertaining to the January 27, 1988, foreclosure sale was also defective. RTC also contends that the Mortons' negligence claim must fail because Evangeline, as the beneficiary under the deed of trust, owed the Mortons no duty. Furthermore, says RTC, the Mortons can show no damage as the result of any alleged negligence. Finally, RTC contends that all the foreclosure sales of the personal property associated with Peddler's Inn were proper and that a deficiency exists with regard to these sales for which the Mortons are liable.

The defendants Whitecotton and SLTSC agree with the Mortons that the foreclosure sale conducted January 27, 1988, was a valid sale and that they are not liable to the Mortons for any negligent conduct. Furthermore, the Mortons ask this court to declare that sale valid inasmuch as the substituted trustee document is sufficient in spite of its defect and the notice of sale was sufficient to properly inform prospective bidders. The Mortons contend further that Evangeline, by and through the RTC, is estopped from attacking the first foreclosure sale and has ratified that sale. The Mortons also argue that any attempt by RTC to claim any purported deficiency is barred by Mississippi's one-year statute of limitations applicable to suits or actions on installment notes following foreclosure of property pledged as security for the note—Miss.Code Ann. § 15–1–23 (1972).[4]

Finally, say the Mortons, Evangeline did not conduct the second foreclosure sale because of any defects. Instead, say the Mortons, the second sale was conducted because the first sale did not leave Evangeline in a

---

4. MCA § 15–1–23 provides:
 In all cases, no suit or action shall hereafter be commenced or brought upon any installment note, or series of notes or three or more, whether due or not, where said note or notes are secured by mortgage, deed of trust, or otherwise, upon any property, real or personal, unless the same is commenced or brought within one year from the date of the foreclosure or sale of the property pledged as security for said note or notes.

position to obtain any additional judgment against the Mortons for deficiency. The Mortons thus charge that realizing this, Evangeline, now represented through the RTC, conducted the second sale without informing the Mortons in order to create a substantial deficit, an asset for the failing savings and loan.

### THE PROBLEM OF THE SUBSTITUTED TRUSTEE

#### a. Failure to Identify the Person Executing the Instrument

■ According to the RTC, the acknowledgment in the substitution of trustee is fatally defective because the acknowledgment does not identify the person who signed the instrument. Exhibit P–15 shows that the space in the acknowledgment provided for this person's name is blank. This circumstance renders the document invalid, says RTC, arguing that such documents must meet the requirements of § 89–3–1, Miss. Code Ann. (1972). *White v. Delta Foundation, Inc.,* 481 So.2d 329, 335 (Miss.1985). Then, the RTC notes that § 89–3–1 (1972) provides in pertinent part that a writing "shall not be admitted to record in the clerk's office unless the execution thereof be first acknowledged or proved, and the acknowledgment of proof duly certified by an officer competent to take the same in the manner directed by this chapter; . . ."

Next, says RTC, Miss.Code Ann. § 89–5–45 requires that substitutions of trustees be properly recorded prior to foreclosure or the foreclosure is "absolutely null and void, both at law and in equity." RTC concludes that the requirements of § 89–5–45 are not met if the acknowledgment in the substitution of trustee is defective. *Id.* at 331–32; *Watson v. Perkins,* 88 Miss. 64, 40 So. 643, 646 (1906) (sale by trustee pursuant to void substitution is void).

The RTC contends that since the purpose of requiring an acknowledgment is to prove that the document has been signed by the person whose name appears on the instrument, *White v. Delta Foundation, Inc.,* 481 So.2d at 332, quoting 1 Am.Jur.2d *Acknowledgments* § 1 at 445 (1962), the failure of the acknowledgment to identify the person who executed the instrument is fatal to the acknowledgment. RTC admits, however, that it has not found any reported Mississippi decision which directly addresses this issue.[5]

Still, the RTC argues that certain Mississippi cases indirectly make the point. The RTC refers the court to the recent decision of the Mississippi Supreme Court in *Thames v. Jackson Production Credit,* 600 So.2d 208 (Miss.1992), wherein the Court, citing Miss. Code Ann. § 89–3–1 (1972), noted that a substitution of trustee is not recordable on the land deed record absent a valid acknowledgment, and, if such document is recorded without a valid acknowledgment, all subsequent actions taken pursuant to that substitution of trustee and all following conveyances are void. *Id.,* 600 So.2d at 210. The Court then cited the Fifth Circuit case of *Mills v. Damson Oil Corporation,* 686 F.2d 1096, 1102–03 (5th Cir.1982), a case which interpreted Mississippi law in light of two ancient Mississippi decisions, *Jones v. Porter,* 59 Miss. 628 (1882), and *Wasson v. Connor,* 54 Miss. 351 (1877). The Fifth Circuit stated that in Mississippi the taking of an acknowledgment is a judicial or quasi-judicial function rather than a ministerial act, which cannot be performed by a grantee in the deed or anyone having a *beneficial interest* in the transaction (emphasis in the original).

Accepting the Fifth Circuit's interpretation of the Mississippi cases, the Mississippi Supreme Court in *Thames* found that one Jim W. Tohill was substituted as trustee by the president of Jackson Production Credit, R.W. Slay. This act was acknowledged by the former trustee on the subject deed of trust, Craig A. McDowell, a notary public and officer of Jackson Production Credit. The acknowledgment was attacked by Thames because the party acknowledging the signature to be that of R.W. Slay, McDowell, did not have an arm's length relationship with the

5. The RTC primarily relies upon holdings in other states such as *Thomas v. Davis,* 241 Ala. 271, 2 So.2d 616, 619 (1941); and *Seale Motor Company, Inc. v. Stone,* 218 S.C. 373, 62 S.E.2d 824, 826–27 (1950).

foreclosing entity, Jackson Production Credit. Hence, according to Thames, the acknowledgment violated Miss.Code Ann. § 25–33–21 (1972) which provides in pertinent part that, "[i]t shall be unlawful for any notary public who is a stockholder, director, officer or employee of a bank or other corporation to take the acknowledgment of any party to a written instrument to or by such corporation . . . where such notary is a party to such instrument. . . ." The Mississippi Supreme Court upheld the lower court's finding that the acknowledgment was valid, notwithstanding that the notary, McDowell, was an officer of the foreclosing bank, because McDowell was not a party to the deed of trust and had no beneficial interest in the transaction individually. *Thames v. Jackson Production Credit,* 600 So.2d at 210–11.

The case *sub judice* does not provide the same scenario. The acknowledgment in question leaves blank that space left for the name of the person the notary public attests to have signed the document or instrument. However, the name of Cordell White appears in the body of the substitution of trustee as the person authorized on behalf of Evangeline to make the substitution. Moreover, Cordell White's signature appears in the space provided for signature. The notary public who acknowledged Cordell White's signature is one Darren E. Guidry. Mr. Guidry, a notary public under Louisiana law, did not insert the name of Cordell White in the blank the acknowledgment provided, but he attested to the signature being that of Cordell White. No one has attacked Guidry's acknowledgment on the basis of any violation of Miss.Code Ann. § 25–33–21.

 A salient point under Mississippi law pertinent to the disposition of this matter is that recordation statutes are to be liberally construed in order that acknowledgments may be upheld whenever there has been substantial compliance with the law. "A liberal interpretation of acknowledgments encompasses examination of the body of the instrument itself, and an acknowledgment will not necessarily be deemed fatal for an omission which can be supplied from the body of the instrument itself." *White v. Delta Foundation, Inc.,* 481 So.2d at 332–33

citing 1 Am.Jur.2d *Acknowledgments* § 43 and the cases therein, and *Griffis v. Martin Oil Company,* 127 Miss. 606, 90 So. 324 (1922). The name of Cordell White is easily obtained from the body of the instrument substituting Whitecotton as trustee and White's appointment of Whitecotton has been acknowledged or proved by a duly certified officer competent to make the acknowledgment. This court is unconvinced that the blank appearing in the acknowledgment which should contain the name of Cordell H. White is a fatal flaw, especially when it easily may be ascertained from the document as a whole that his is the name that should appear there. Hence, this court finds that the acknowledgment substantially meets the requirements of § 89–3–1 and is not fatally defective for failure to identify the person who executed the instrument.

**b.** ***Failure to State that the Person Executing the Instrument Did So As the Act and Deed of Evangeline***

 RTC contends here that Mississippi requires certain specific language in acknowledgements to show that the person who signed the substitution of trustee did so on behalf of the beneficiary of the deed of trust. Otherwise, says RTC, any sale thereunder is invalid. In support of this proposition, RTC directs this court's attention specifically to a segment of the Mississippi Supreme Court's decision in *White v. Delta Foundation, Inc.,* wherein the Court stated:

> The acknowledgment in this case should have stated that Early signed and delivered the document for and on behalf of Delta Foundation, *and as its act and deed,* after first being authorized by the corporation to do so.

481 So.2d at 332 (emphasis in original). According to RTC, then, under the rubric of the *White* holding, a corporate acknowledgement must contain the words "and as its act and deed" in order to show that the person signing the substitution of trustee acted on behalf of the corporate beneficiary. Acknowledgements which fail to include these magic words and, as in the present case, merely certify that the person "acted on behalf of" the beneficiary, argues RTC, are invalid.

The instrument and acknowledgment before the Court in the *White* case was rife with deficiencies and is set forth as follows:

### APPOINTMENT OF SUBSTITUTE TRUSTEE

UNDER AND BY VIRTUE of the authority vested undersigned mortgagee, DELTA FOUNDATION, INC. OF GREENVILLE, MISSISSIPPI, by that certain deed of trust hereinafter listed, the aforesaid mortgagee, acting by and through its duly authorized officer, KEITH EARLY, General Counsel, does hereby nominate and appoint WILLIAM A. MURRAIN as Substitute Trustee in the hereinafter listed deed of trust, with full power to act in the place and stead of the original trustee therein named, to-wit:

"Deed of Trust from ·Roger White et ux Joyce Y. White to John Nichols, Trustee for Delta Foundation, Inc., dated December 22, 1977 and recorded in Book 470 at page 564.

The above listed deed of trust is on file and of record in the office of the Chancery Clerk of Madison County at Canton, Mississippi.

WITNESS THE SIGNATURE AND SEAL OF STATE MUTUAL FEDERAL SAVINGS AND LOAN ASSOCIATION, Jackson, Mississippi, hereto affixed on the 19th day of September, 1980.

DELTA FOUNDATION, INC.

BY: /s/ Keith Early

The acknowledgment of this instrument was set forth as follows:

ATTEST:

STATE OF MISSISSIPPI
COUNTY OF HINDS.....

PERSONALLY appeared before me, the undersigned authority in and for the jurisdiction aforesaid, the within named KEITH EARLY, who acknowledged that he signed and delivered the above and foregoing instrument of writing on the day and in the year therein mentioned.

/s/ Dawn E. Sutton

MY COMMISSION EXPIRES:
OCTOBER 23, 1983

\* \* \*

Of this instrument the Mississippi Supreme Court said:

> This appointment of substituted trustee is woeful draftsmanship. The final paragraph states it is "State Mutual Federal Savings & Loan Association" making the substitution. The instrument, however, purports to be executed by Delta Foundation. The signature is ambiguous; headed "DELTA FOUNDATION, INC." and with a signature "Keith Early," who does not designate whether he signs as agent or in his own individual capacity. The acknowledgment which follows is a personal acknowledgment, not a corporate acknowledgment, nor as agent and attorney for the corporation. Moreover, the notarization contains no final paragraph or date.

*White v. Delta Foundation, Inc.,* at 331–32.

Certainly the substitution of trustee and acknowledgment in the case *sub judice* (exhibit P–15) does not suffer the deficiencies shown in *White*. The instrument and acknowledgment in the case *sub judice* are set forth as follows:

### *APPOINTMENT OF SUBSTITUTED TRUSTEE*

BY VIRTUE of the authority vested in me, CORDELL H. WHITE, on behalf of EVANGELINE FEDERAL SAVINGS AND LOAN ASSOCIATION, domiciled in the City of Lafayette, State of Louisiana, in that certain Deed of Trust from LARRY ELLIS MORTON and wife, SANDRA C. MORTON to Larry Tyson, Trustee, Evangeline Federal Savings and Loan Association, Beneficiary, instrument dated December 29, 1983, filed for record January 3, 1984, recorded in Land Deed of Trust Book 578 at page 333, on file in the office of the Chancery Clerk of Forrest County, Mississippi, I, CORDELL H. WHITE, for and on behalf of EVANGELINE FEDERAL SAVINGS AND LOAN ASSOCIATION, and being duly autho-

rized, do hereby appoint D. JENE WHITECOTTON of Hattiesburg, Mississippi, as Trustee in said Deed of Trust to Evangeline Federal Savings and Loan Association.

WITNESS MY SIGNATURE of Evangeline Federal Savings and Loan Association, this the 17th day of December, A.D., 1987.

EVANGELINE FEDERAL SAVINGS
AND LOAN ASSOCIATION

BY: /s/ CORDELL H. WHITE
ITS DULY AUTHORIZED
AGENT

Witness: John David McCarthy

Bofil Duhé

The acknowledgment following the instrument states:

STATE OF LOUISIANA )
)
PARISH OF LAFAYETTE )

PERSONALLY appeared before me, the undersigned authority in and for the above and foregoing Parish and State, the within named _____, on behalf of EVANGELINE FEDERAL SAVINGS AND LOAN ASSOCIATION, who acknowledged before me that he signed, executed and delivered the above and foregoing APPOINTMENT OF SUBSTITUTED TRUSTEE on the day and year therein mentioned for and on behalf of said Evangeline Federal Savings and Loan Association, having been heretofore duly authorized and empowered so to do.

GIVEN UNDER MY HAND AND OFFICIAL SEAL on this the 17th day of December, A.D., 1987.

/s/ Darren E. Guidry
NOTARY PUBLIC

MY COMMISSION EXPIRES: SEAL
LIFE

* * *

This instrument and the acknowledgment differ from that found in *White* in several ways. The final paragraph is consistent, making clear that it is Evangeline Federal Savings and Loan that is making the substitution. The instrument is executed by Evangeline Federal Savings and Loan. The signature is unambiguous, headed "EVANGELINE FEDERAL SAVINGS AND LOAN" with the signature of "Cordell H. White" who designates that he signs as the duly authorized agent for Evangeline. Finally, the notarization contains a final paragraph and is dated December 17, 1987. Hence, this instrument and the acknowledgment do not contain the fatal flaws noted by the Mississippi Supreme Court in the *White* case. Notwithstanding that the instrument and acknowledgment in the instant case do not contain the flaws found in *White*, the RTC contends that the instant instrument and acknowledgment are invalid because the acknowledgment does not say that Cordell H. White (or anyone else) signs as the act and deed of Evangeline.

Mississippi's statute which governs forms of acknowledgment is Miss.Code Ann. § 89-3-7 (1972). The statute was amended in 1988, effective from and after July 1, 1988, and for the first time included statutory forms of acknowledgment for corporations and persons acting in a representative capacity. Of course, this statute cannot be applied to the December 17, 1987, substitution of trustee appointing Whitecotton or the June 27, 1988, substitution of trustee appointing W. Rodney Clement. Nevertheless, RTC seeks to bolster its argument by comparing these two acknowledgments, noting that the acknowledgment of the second substitution of trustee follows the form suggested by the Mississippi Supreme Court in *White* at footnote one, and later adopted virtually verbatim by the Mississippi Legislature when it amended § 89-3-7 effective July 1, 1988. The second substitution of trustee was acknowledged as follows:

STATE OF LOUISIANA

PARISH OF LAFAYETTE

Personally appeared before me, the undersigned authority in and for the aforesaid jurisdiction, CORDELL H. WHITE, who acknowledged to me that he is President of Evangeline Federal Savings & Loan Association, and as its act and deed, he signed

and delivered the above and foregoing Appointment of Successor Trustee on the day and year therein mentioned, after first having been duly authorized to do so.

GIVEN UNDER MY HAND AND OFFICIAL SEAL on this the 27th xxxx day of June, 1988.

/s/ Darren E. Guidry
NOTARY PUBLIC

MY COMMISSION EXPIRES:
at death
SEAL

It cannot be denied that this acknowledgment of the second substitution of trustee follows the form suggested by the Mississippi Supreme Court in *White* at footnote one, but the question to be resolved is whether the acknowledgment of the first substitution of trustee is fatally defective for failure to sufficiently follow this form as argued by RTC.

In *Gregory v. Federal Land Bank of Jackson*, 515 So.2d 1200 (Miss.1987), decided prior to the amendment of § 89–3–7 but after *White*, the Mississippi Supreme Court dealt with a substitution of trustee wherein one W. Bryan Babin signed and delivered the same "as Vice President, Secretary and General Counsel of the Federal Land Bank of New Orleans, a corporation." The *Gregory* Court, addressing the matter of a corporate acknowledgment, found that this language plainly indicated that Babin was acting in his capacity as a corporate officer and not in his individual capacity. The Court concluded its finding on this point by stating, "[t]hat additional language may have made the point more clear does not mean that it is not clear." *Id.* at 1202. Apparently, the Mississippi Supreme Court was not so concerned with the specific phrase used so long as the language conveyed the distinct impression that the person signing for the corporation did so in an official rather than an individual capacity.

As the RTC acknowledges in its post trial brief, the *White* Court only stated that any official acknowledgment for public record of a corporate document should in some manner

make it clear that it is the corporation executing the instrument by and through an authorized officer, officers or agent. *White v. Delta Foundation, Inc.*, 481 So.2d at 333. While it is true that the *White* Court, referring to the specific substitution of trustee instrument before it, said that it should have stated that Early signed and delivered the document on behalf of Delta Foundation "and as its act and deed" after being duly authorized to do so, there is nothing to indicate that the Court would require more in any case prior to the amendment of § 89–3–7 other than language that would in some manner make clear that it is the corporation executing the instrument by and through an authorized officer, officers or agent. The manner is not specified, so long as there is clarity. *See Federal Land Bank of Jackson v. Kennedy*, 662 F.Supp. 787 (N.D.Miss. 1987), noting that, according to *White*, Mississippi requires an official acknowledgment for public record of a corporate document to in some manner make it clear that it is the corporation executing the instrument by and through an authorized officer. *Id.* at 791.

Prior to the amendment of § 89–3–7, Mississippi had no particular form for the acknowledgment of an instrument by a corporation and permitted a disputed acknowledgment to be recorded where the language sufficiently identified the official character of the corporate officer. *Griffis v. Martin Oil Company*, 127 Miss. 606, 90 So. 324 (1922); *White v. Delta Foundation, Inc.*, 481 So.2d at 332.

Therefore, this court finds that the absence of the phrase "and as its act and deed" is not an omission which renders the acknowledgment fatally defective. The acknowledgment states that someone is acting on behalf of Evangeline, having been duly authorized and empowered to act. From the rest of the document, it can be easily ascertained that this someone is Cordell H. White. Clearly, the language of the acknowledgment shows that it is the corporation executing the instrument by and through an authorized officer.

#### c. *Failure to State the Capacity in Which the Instrument Was Signed*

■ RTC next argues that even if the legend under the signature line of the first

appointment of substituted trustee (exhibit P–15) states that the person who executed the substitution of trustee did so as Evangeline's duly authorized agent, nothing in the acknowledgment identifies the person's capacity or authority to act on Evangeline's behalf. RTC cites no Mississippi authority in direct support of this contention.

The cases of *Gregory v. Federal Land Bank of Jackson,* 515 So.2d 1200 (Miss.1987), and *Federal Land Bank of Jackson v. Kennedy,* 662 F.Supp. 787 (N.D.Miss.1987), both say that the Mississippi Supreme Court's decision in *White* holds that any official acknowledgment for public record of a corporate document should in some manner make clear that it is the corporation executing the instrument by and through an authorized officer. Neither case quotes *White* precisely since *White* says, "by and through an authorized officer, officers *or agent.*" (emphasis added). *White v. Delta Foundation, Inc.,* 481 So.2d at 333. Hence, if Cordell H. White was the authorized agent for Evangeline, as stated in the December 17, 1987, instrument, who might also serve as president, secretary and or general counsel of the corporation, then, according to the RTC, the acknowledgment additionally would have to state one of these offices, or more than one of them, in order for the acknowledgment to be valid.

This court does not agree with the RTC. The *White* case plainly holds that an authorized agent is one who has official capacity to act for a corporation. The acknowledgment in question says that whoever the person is who appeared before the notary public acknowledged that he signed, executed and delivered the appointment of substituted trustee on behalf of Evangeline Federal Savings and Loan, having been authorized and empowered so to do. As this court has already determined, it may be easily ascertained from the instrument that the person who appeared before the notary public was Cordell H. White. The signature line in question identifies Cordell H. White as the duly authorized agent of Evangeline. Nothing in the *White* decision suggests that this would not be sufficient. The signature line considered by the Mississippi Supreme Court in *White* did not identify Keith Early as the

duly authorized agent of anyone, and the authority that might have appointed him is ambiguous because more than one name appears. The facts in the case *sub judice* are simply foreign to those in *White.*

Nevertheless, RTC argues that the reference in the body of the December 17, 1987, instrument to some undefined agency relationship is not sufficient to save the omission of the grantor's representative capacity in the acknowledgement, citing *Federal Land Bank v. Kennedy,* 662 F.Supp. at 791. In *Kennedy,* the Court found that the disputed acknowledgment clearly identified the individual executing the instrument, his corporate position, and that he was acting in such capacity. However, the *Kennedy* Court did not set forth the disputed acknowledgment in the Court's memorandum opinion for any subsequent court's perusal. The Court simply concluded that the acknowledgment in the disputed document was adequate, citing the aforesaid principle of *White* that any official acknowledgment for public record of a corporate document should in some manner make it clear that it is the corporation executing the instrument by and through an authorized officer, officers or agent.

This court finds that the acknowledgment *sub judice* adequately identifies the person who appeared before the notary public as the duly authorized agent of Evangeline. The instrument provides the name of that person as Cordell H. White. At the time the instrument and acknowledgment were written, Mississippi had no statutorily prescribed form for a corporate acknowledgment to follow. The case law merely required that the acknowledgment make clear that the person executing the instrument on behalf of a corporation did so in an official capacity rather than an individual capacity. This court is convinced that the acknowledgement herein satisfies that test.

### IS THE DECEMBER 28, 1987 NOTICE OF SALE VALID?

#### a. Failure to Name a Mortgagor

█ RTC next argues that the substituted trustee's notice of sale dated December 28, 1987, does not identify one of the original mortgagors, Sandra C. Morton (exhibit P–

18), as allegedly required by Miss.Code Ann. § 89-1-55 (1972). Referring to a Mississippi Supreme Court decision which precedes the current version of § 89-1-55, RTC notes that the statute is in derogation of common law and must be strictly construed. *Wilkinson v. Federal Land Bank*, 168 Miss. 645, 150 So. 218, 219 (1933).

Section 89-1-55 provides in pertinent part that:

> ... Sale of said lands shall be advertised for three consecutive weeks preceding such sale, in a newspaper published in the county, or, if none is so published, in some paper having general circulation therein, and by posting one notice at the courthouse of the county where the land is situated, for said time, and such notice and advertisement shall disclose the name of the original mortgagor or mortgagors in said deed of trust or other contract. No sale of lands under a deed of trust or mortgage shall be valid unless such sale shall have advertised as herein provided for, regardless of any contract to the contrary....

The December 28, 1987, notice of sale (exhibit P-18) states in pertinent part as follows:

> "WHEREAS, LARRY ELLIS MORTON, married to and living with SANDRA C. MORTON, both residents of Arkansas, and whose mailing address is 1501 North University, Suite 564, Little Rock, Arkansas, doing business as HOTEL EQUITY CORP., on behalf of THE BEST WESTERN, PEDDLER'S INN, HATTIESBURG, MISSISSIPPI, executed a Deed of Trust to Larry Tyson, Trustee ..., EVANGELINE FEDERAL SAVINGS AND LOAN ASSOCIATION, Beneficiary, ..., in the amount of ONE MILLION EIGHT HUNDRED THOUSAND AND 00/100 ($1,800,000.00), instrument dated December 29, 1983, filed for record January 3, 1984, at 8:01 a.m., and recorded in Land Deed of Trust Book 478 at Pages 33-339, on file in the office of the Chancery Clerk of Forrest County, Mississippi,...."

According to RTC, the parenthetical phrase, "married to and living with SANDRA C. MORTON ... etc.," separates the name of Sandra C. Morton from the subject, thereby making the name of Larry Morton and only the name of Larry Morton the subject of the verb "executed" with regard to that deed of trust recorded at Book 478, Pages 333-339. Hence, according to RTC's argument, Sandra C. Morton was not named as a person who executed the deed of trust and, therefore, is not named as a mortgagor. This syntax, says RTC, made void the January 27, 1988, sale under Evangeline's deed of trust and necessitated the second sale on August 17, 1988. Even the most technical errors in a notice of sale, says RTC, make the sale void. *Blakeney v. Smith*, 183 Miss. 151, 183 So. 920 (1938). In *Blakeney*, the deed of trust was signed by one of two grantors as B. Blackeney, but the trustee's notice of sale gave the name as B.B. Blackeney. The Court found that misnaming the mortgagor was a fatal error in the notice of sale and that this made the entire sale void, even though the notice correctly set forth the name of the other grantor and all the other information regarding the deed of trust sale. 183 So. at 922.

The Mortons respond that the notice of sale accurately sets forth the time and place of the execution of the deed of trust, the term of sale, the description of the property, the trustee and the beneficiary. Furthermore, say the Mortons, if an interested bidder had any doubt that both the Mortons were mortgagors, this could easily be ascertained by reference to Book 478, Page 333. For an interested layman bidder to have further doubts after consulting Book 478, page 333, say the Mortons, would be unreasonable.

In *Federal Land Bank v. Kennedy*, 662 F.Supp. 787 (N.D.Miss.1987), the Court noted that the Mississippi Supreme Court had declared foreclosures void primarily in instances where the notice of sale misdescribed the subject property. *Id.* at 791, citing *Seal v. Anderson*, 235 Miss. 249, 108 So.2d 864 (1959); *Hancock v. Pyle*, 191 Miss. 546, 3 So.2d 851 (1941). When determining whether a notice of sale is otherwise fatally defective, trial courts, said the *Kennedy* Court, must ascertain whether a layman of average intelligence and business prudence, armed

**998**

with the knowledge imparted in the notice of sale, would consider a bid unsafe. *Federal Land Bank v. Kennedy,* at 791, citing *Federal Land Bank of New Orleans v. Collom,* 201 Miss. 266, 28 So.2d 126, 128 (1946). The *Kennedy* Court concluded that the failure of the notice of sale to give the correct page number in the book where the deed of trust was recorded was not a fatal error. The district court found that the notice of sale gave the correct name of the county, the trustee, the mortgagee, and, most significantly, it gave the correct date of substitution of trustee and the correct book number. With this information, said the district court, a layman of average intelligence and business prudence could easily find and examine the substitution of trustee instrument and find that it was duly recorded. The district court concluded that no reasonable person could conclude that a bid on this property was not safe.

This court agrees with the Mortons on this point. The syntax of the notice of sale is unfortunate, but the matter is one easily clarified by that deed of trust at Book 478, Page 333 of the Land Records located in the office of the Chancery Clerk of Forrest County, Mississippi. Laymen who make bids a foreclosure sales generally make themselves familiar with the deed of trust being foreclosed.

However, RTC cites as contrary to this court's view the decision of *Haygood v. First National Bank of New Albany,* 517 So.2d 553 (Miss.1987). According to the RTC, *Haygood* stands for the proposition that the requirement in § 89–1–55 that the names of all mortgagors be indicated on the notice of sale must be strictly construed. *Id.* at 557, citing *Wilkinson v. Federal land Bank,* 168 Miss. 645, 150 So. 218, 151 So. 761 (1933) (complete omission of a co-mortgagor from a notice of sale invalidated the sale). In *Haygood,* the husband, the wife and their son all signed the deed of trust in question. Upon default, the mortgagee foreclosed and posted a notice of sale which identified the husband and wife as mortgagors. The son also was identified in the notice of sale, but as a record part-owner rather than a mortgagor. As the *Haygood* Court correctly observed, a

mortgagor and a record owner are not the same. Furthermore, as the *Haygood* Court additionally observed, identifying the son as a record owner gave the impression that he was a co-tenant whose interest in the land was unencumbered by his parents' mortgage. Hence, the notice in *Haygood* failed because the son was clearly not named as one of the three mortgagors.

▮ Of course, foreclosure on a deed of trust is an equitable remedy, and equity looks to actual substance rather than mere form. *Kemp v. Atlas Fertilizer & Chemical Company,* 199 So.2d 52 (Miss.1967). Furthermore, equity regards as done that which ought to be done. *PMZ Oil Company v. Lucroy,* 449 So.2d 201 (Miss.1984). In this instance, it is clear that Evangeline intended to foreclose upon its deed of trust and sell the property in question on January 27, 1988, and thereby extinguish the interest of the Mortons. The errors alleged as fatal in this litigation could have been corrected by conducting a second foreclosure sale and repeating the same bid as before, or the Mortons could have been approached for a quitclaim deed. However, Evangeline did neither. Instead, Evangeline undertook to reforeclose and change its bid to create a deficit. According to the testimony of Scott Wheeler, Evangeline did not want the Mortons made aware of the circumstance.

Furthermore, as noted by the Mortons, no Mississippi case has dealt specifically with the circumstance of a mortgagee attacking its own foreclosure documents in order to have them declared void so that it might conduct a second sale, lower its bid, and create a deficit. Hence, under these facts and pursuant to the directive of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), *Rittenhouse v. Mabry,* 832 F.2d 1380, 1382 (5th Cir.1987), and *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1264 (5th Cir.1983), this court determines that the courts of Mississippi would not find the published notice of sale improper or void in the instant case, notwithstanding the decision in *Haygood.* In so holding, this court also rejects RTC's contention that the notice of sale also misidentifies the capacity

of Larry Morton and adds two new parties not mentioned in the deed of trust.

### b. *The Deed of Trust Does Not Specify the Place for Sale*

 RTC contends that the first foreclosure sale failed to meet the condition of the deed of trust requiring the trustee to hold the sale only at the place advertised. RTC refers to two Mississippi statutes: Miss.Code Ann. § 89–1–57 which provides that if a deed of trust does not specify a place for sale, the sale must be held in the place required for sheriff's sale; and Miss.Code Ann. § 13–3–161 which designates the county courthouse as the place for sheriff's sales.

It is undisputed that on March 2, 1987, the Forrest County Courthouse located at 630 Main Street, Hattiesburg, was undergoing renovation and was closed for business. It is also undisputed that on account of this circumstance, the Board of Supervisors of Forrest County designated the Paul B. Johnson, Jr. Chancery Facility, located at 641 Main Street, as the temporary courthouse for Forrest County. All foreclosures thereafter were to be conducted at this facility.

RTC says the December 28, 1987, notice of sale specifically should have stated that the January 27, 1988, sale would be conducted at the "Chancery Facility" instead of the "courthouse". According to the RTC, this failure to identify the place required by law as the place of sale makes the sale ineffective under the deed of trust. Renovation of the Forrest County Courthouse, says RTC, does not cure the requirement that the notice of sale must correctly identify the place where the sale would be held, citing *Federal Land Bank v. Kennedy*, 662 F.Supp. 787, 791 (N.D.Miss. 1987), and *Seal v. Anderson*, 235 Miss. 249, 108 So.2d 864, 866 (1959). Hence, says RTC, the failure to identify correctly the place of sale is fatal error.

RTC also relies on the case of *Walker v. Brungard*, 13 Smedes & Marshall (21 Miss.) 723, 763 (1849), in support of the argument that a Trustee has no inherent power to conduct a sale unless the statutory conditions governing his power to sell have been established. Hence, says RTC, Jene Whitecotton lacked the authority to sell the Peddler's Inn property because all circumstances which would legalize Whitecotton's power to sell as trustee were not met. This court is not persuaded.

The December 28, 1987, notice of sale stated that the property in question would be offered for sale on Wednesday, January 27, 1988, within the hours of 11:00 a.m. and 4:00 p.m., "at the main front door of the Forrest County Courthouse." The Forrest County Circuit Courthouse was closed at that time and a sign directed persons to go across the street in order to conduct business at the courthouse. According to the order of the Forrest County Supervisors, the Chancery facility was the official courthouse while renovation was being conducted at the regular courthouse. Testimony varies, but as few as twelve and as many as twenty persons may have been present to bid on the Peddler's Inn on January 27, 1988. Persons familiar with the community certainly were aware of the temporary circumstances. And, owing to the sign on the Forrest County Circuit Courthouse, persons from outside the community had no problems. David T. DeBerry, for instance, who resided in Memphis, Tennessee, at the time in question said that he was able to find the place where the sale was being conducted.

Neither *Federal Land Bank v. Kennedy* nor *Seal v. Anderson* is particularly helpful with the issue at hand. Mississippi's execution statute makes no provision for the circumstance of courthouse renovation. Therefore, inasmuch as this court holds that the notice of sale stated that the place of sale would be the Forrest County Courthouse, and the Chancery facility was the duly designated courthouse pursuant to the order of the Forrest County Supervisors, this court is satisfied that this situation does not affect the validity of the sale.

### THE WAIVER AND ESTOPPEL ARGUMENT

 Although waiver and estoppel are sometimes used interchangeably, waiver describes the act, or the consequences of the act of one party only, while estoppel exists when conduct of one party has induced other party to take a position that would result in

harm if the first party's act was repudiated. *Pitts By and Through Pitts v. American Security Life Insurance Company*, 931 F.2d 351 (5th Cir.1991). Waiver is defined as "the voluntary or intentional relinquishment of a known right." *Id.*, 931 F.2d at 357, citing *General Electric Supply Co. v. Utley–James of Texas, Inc.*, 857 F.2d 1010, 1013 n. 1 (5th Cir.1988); *Peterson v. Wahcondah*, 331 F.2d 44, 48 (5th Cir.1964); 19B Appleman, *Insurance Law and Practice*, § 9086, at 536–39 (1981). "Estoppel is based on grounds of public policy, fair dealing, good faith and justice, and it purposes to forbid one to speak against his own act, representation or commitment to the injury of one to whom they were directed and who reasonably relied thereon." *Koval v. Koval*, 576 So.2d 134 (Miss.1991).

This court finds elements of both waiver and estoppel present in the instant case. As this court earlier observed, Evangeline intended to foreclose upon its deed of trust on January 27, 1988, sell the property in question to the highest bidder, and thereby extinguish the interest of the Mortons completely. In the presence of several prospective bidders, Evangeline announced a high bid based upon appraisals of the property. Evangeline was fully aware of the consequences of the action it took. This is apparent from Evangeline's accepting the proceeds of the first sale and indicating on its books that the Mortons' debt was paid. Furthermore, Evangeline took control of the Peddler's Inn operation and designated new management. Later, in an effort to create a deficit by its own bid at foreclosure, Evangeline undertook to reforeclose on August 17, 1988, and lower its original bid from $1.9 million to $805,000 under the pretext of correcting errors in the first foreclosure sale. This sale was conducted with only Evangeline present. Thus, Evangeline is before this court attacking its own foreclosure actions and its documents in an attempt to have them declared void to justify the second sale, then lowering its original bid, and profiting thereby at the expense of the Mortons who relied on Evangeline's first foreclosure.

This court finds that Evangeline is bound by the consequences of its act—the initial foreclosure of the property in question. When Evangeline made and accepted its own bid of $1.9 million dollars at the first foreclosure sale, it waived the right to enter any lower bid, especially a lower bid at a later time in order to make itself a better deal. Additionally, Evangeline is estopped from claiming a deficit against the Mortons since they relied upon Evangeline's actions in conducting the first foreclosure sale and believed their indebtedness to have been satisfied by that sale. This court specifically rejects the RTC's argument that Evangeline accepted the benefits of the first foreclosure sale in ignorance of the true facts. *Simpson v. M–P Enterprises, Inc.*, 252 So.2d 202, 206–07 (Miss.1971) (holding that prerequisite to the application of the doctrine of estoppel is that party to be estopped must have had knowledge of the situation).

Therefore, this court finds that the first foreclosure sale conducted by Evangeline on January 27, 1988, is valid and binding on Evangeline. The Mortons' request for declaratory judgment on the matter of the validity of the first foreclosure sale is hereby granted. The court further finds that the Mortons' claim of negligence against Jene Whitecotton, an alternative claim, is without foundation in view of the court's holding that the first foreclosure sale is valid. Hence, the Mortons' negligence claim against Whitecotton is dismissed. Likewise, the claim of Evangeline against Southern Land Title Service, Inc., for negligence is dismissed. Finally, the court finds that the matter of the deed of trust, security agreement, and note of David T. DeBerry is not before the court inasmuch as the deed of trust has not been foreclosed and no deficit thereunder may be claimed at this time. The deed of trust of David T. DeBerry is still outstanding and appears as a matter of record in the Land Deed of Trust Records of the Chancery Court of Forrest County, Mississippi.

**SO ORDERED AND ADJUDGED.**